Robert J. La Reddola, Esq.
Steven M. Lester, Esq.
La REDDOLA, LESTER & ASSOCIATES, LLP
Attorneys for Plaintiff
600 Old Country Road, Suite 230
Garden City, New York 11530
(516) 745-1951
sml@llalawfirm.com
rjl@llalawfirm.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

LAMBERT HENRY,

                        Plaintiff,

   -against-

COUNTY OF NASSAU and NASSAU
COUNTY POLICE DEPARTMENT, former
Acting Commissioner THOMAS KRUMPTER,
Acting Commissioner PATRICK RYDER, and
"JOHN DOES #1-3" and "JANE DOES #1-3,"
said names being fictitious, but intended to
designate certain unknown employees of the
County of Nassau in the Pistol License Section of
the Nassau County Police Department,

                        Defendants.

------------------------------------------------------------------X

Case No.

**COMPLAINT**

**Jury Demanded**

     Plaintiff Lambert Henry, by his attorneys, La Reddola, Lester & Associates, LLP, for his Complaint against the Defendants, alleges:

### Nature of the Action

     1.    This is a civil rights action for a declaratory judgment, monetary damages, and injunctive relief. Plaintiff Lambert Henry seeks monetary damages under 42 U.S.C. § 1983 for the violation by Defendants of his Second Amendment right to possess any firearm, including a

rifle or shotgun, based upon Defendants' policy or practice to bar ownership of any firearm if a Nassau County pistol licensee has his pistol license revoked.

## Jurisdiction and Venue

2. This Court has jurisdiction of this action under 28 U.S.C. § 1331. This action arises under the Constitution and laws of the United States and under 28 U.S.C. § 1343 in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of New York, of rights, privileges or immunities guaranteed to the Plaintiff under the Second Amendment of the United States Constitution.

3. This action seeks relief pursuant to 42 U.S.C. §§ 1983 and 1988.

4. Pursuant to New York General Municipal Law § 50-e and § 50-1, Plaintiff filed a Notice of Claim and more than 90 days have elapsed since the service of the Notice of Claim upon the Defendants and compliance, adjustment or payment thereof has been neglected or refused. A copy of the Notice of Claim is attached as Exhibit 1.

5. Venue in this judicial district is proper under 28 U.S.C. § 1391(b), since all of the events and omissions giving rise to the Plaintiff's claims arose in Nassau Country and in this judicial district. Moreover, upon information and belief, all parties currently reside or maintain offices in Nassau County.

## Parties

6. Plaintiff Lambert Henry is a citizen of the State of New York, a resident of Nassau County, residing at 118 Shaw Avenue, Valley Stream, New York 11580.

7. Upon information and belief, Defendant County of Nassau (the County) is a duly constituted municipal corporation of the State of New York, existing and operating under and by virtue of the laws of the State of New York.

8. Upon information and belief, Defendant Nassau County Police Department (the Police Department) is an administrative arm of the County with offices located at 1490 Franklin Avenue, Mineola, New York.

9. Upon information and belief, Defendant Thomas Krumpter (Krumpter) was at all relevant times the former Acting Commissioner of the Police Department with an office located at 1490 Franklin Avenue, Mineola, New York. Upon further information and belief, Krumpter has retired from the Police Department.

10. Upon information and belief, Defendant Patrick Ryder (Ryder) is currently the Acting Commissioner of the Police Department with an office located at 1490 Franklin Avenue, Mineola, New York.

11. Upon information and belief, Defendants "JOHN DOES #1-3" and "JANE DOES #1-3," are fictitious names intended to designate certain unknown employees of the County in the Police Department's Pistol License Section.

12. All Defendants herein are being sued in both their official and individual capacities.

**Factual Background: Initial Unauthorized Removal By Nassau County Sheriff**

13. On October 20, 2014, Plaintiff Henry's daughter Brittney Janesse Henry commenced a case against him in the Family Court of the State of New York, County of Nassau (Family Court).

14. The case arose when Plaintiff Henry's daughter called the Police Department as a result of an argument with Plaintiff about her school grades.

15. Also on October 20, 2014, an *Ex Parte* Temporary Order of Protection (the Order) was issued against Plaintiff Henry by Hon. Frank D. Dikranis of the Family Court. A copy of the Order is attached as Exhibit 2.

16. Pursuant to Judge Dikranis's Order, Henry was ordered to:

> [02] Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats, identity theft, grand larceny, coercion or any criminal offense against Brittney Janesse Henry (DOB: 06/14/1995). (*See* Exhibit 2, p. 2).

17. Pursuant to its terms, the Order was to remain in full force and effect until and including April 19, 2015.

18. However, the Order did **not** contain the form provision requiring Plaintiff Henry to surrender his handguns, pistols, shotguns and other firearms. The form provision that was **not** contained in the Order directs a Family Court respondent to:

> [12] Surrender any and all handguns, pistols, revolvers, rifles, shotguns and other firearms owned or possessed, including, but not limited to, the following: any and all firearms and do not obtain any further guns or other firearms. Such surrender shall take place immediately, but in no event later than immediately at local police precinct.

19. On October 23, 2014 between 9:30 p.m. and 10:00 p.m., and after Plaintiff Henry had gone to bed for the night, approximately four Nassau County Deputy Sheriffs served Henry with the Order at his home.

20. The Deputy Sheriffs did not have a search warrant to enter and search Henry's home.

21. As a retired New York City Corrections Officer, Henry was and is still well aware of his rights under the law as they relate to firearms.

22. The Deputy Sheriffs were authorized only to serve the Order and related Family Court papers on Henry and they were to depart.

23. The Deputy Sheriffs had no other legal authority.

24. The Deputy Sheriffs came to the door and told Henry's ex-wife, Kim Kennedy Henry, with whom Plaintiff Henry resides, that they wanted to speak with Henry.

25. Henry opened the front door to his residence when the Deputy Sheriffs identified themselves as agents of the Nassau County Sheriff's Department.

26. As soon as Henry opened the door, all of the Deputy Sheriffs entered Henry's home.

27. Henry did not authorize the Deputy Sheriffs to enter his home.

28. The Deputy Sheriffs told Henry that he was being served with a Summons to appear in Family Court for a Temporary Order of Protection hearing and that he was to appear in Family Court on the return date indicated on the Summons.

29. It was at this time that Plaintiff Henry identified himself to the Deputy Sheriffs as a retired New York City Corrections Officer.

30. Henry observed that the Order contained no provision for the removal of firearms.

31. Despite the absence of a firearms removal provision in the Order, the Deputy Sheriffs demanded that Plaintiff Henry produce for the Deputy Sheriffs all of his firearms for removal from Henry's residence.

32. Although Henry strongly disagreed with the confiscation of his handguns by the Deputy Sheriffs, he complied with their demands.

33. Henry did not physically obstruct the unauthorized and involuntary confiscation of his handguns by the Deputy Sheriffs.

34. When the Deputy Sheriffs inquired as to whether Henry had any other weapons in his home, such as rifles or shotguns, he responded accurately that he did not possess or own any other firearms.

35. On the March 12, 2015 return date, the Order was dismissed.

36. However, Henry's handguns were not returned to him at that time.

### Nassau County Police Department Action Regarding Handguns

37. On or about October 12, 2016, Henry received a Notice of Pistol License Revocation (the Revocation Notice) from the Police Department's Pistol License Section. A copy of the Revocation Notice is attached as Exhibit 3.

38. Upon information and belief, no good cause exists to revoke Henry's pistol license.

39. Under New York Penal Law Section 400 *et seq.*, the County and the Police Department administer the rules and regulations regarding pistol licenses in Nassau County.

40. Upon information and belief, the County and the Police Department believe the possession of a pistol license to be a privilege, not a right.

41. Upon information and belief, the County and the Police Department make determinations on whether or not a pistol license should be granted, suspended or revoked under a standard of "proper cause" under New York Penal Law Section 400 *et seq.*

42. By contrast, there is no license required for a rifle or shotgun in New York State or the County of Nassau.

43. Nassau County and the Police Department do not have authority over rifles and shotguns.

44. Accordingly, an individual such as Henry does not need to demonstrate proper cause to own or possess a rifle or shotgun.

45. However, according to the Revocation Notice, the County claims that based upon N.Y. Penal Law § 400 and the SAFE Act, Henry is "prohibited from possessing firearms, rifles and shotguns" by virtue of the revocation of his pistol license. (*See* Exhibit 3).

46. The County claims that under the SAFE Act, since Henry's pistol license has been revoked, he is barred from **possessing or owning any firearms**, including rifles or shotguns. (*See* Exhibit 3, p. 1 ("As directed by New York State Penal Law section 400, and the New York State Secure Ammunitions and Firearms Enforcement Act, you are prohibited from possessing firearms, rifles, [and] shotguns")).

47. Upon information and belief, the County is essentially holding all firearms to the same "proper cause" standard as Nassau County pistol licensees.

48. Upon information and belief, the County knows this to be an unconstitutional standard for the ownership and possession of rifles and shotguns.

49. By asserting that a loss of a pistol license is equivalent to a total ban on all firearms ownership, the County is acting in a deliberately outrageous manner that offends the senses in violation the Constitutional rights of its residents.

50. By asserting that a loss of a pistol license is equivalent to a total ban on all firearms ownership, the County is deliberately depressing the number of pistol licenses. Nassau

County residents who choose to have a pistol license stand to risk the loss of all firearms, while non-pistol licensees do not face the same risk under the County's unconstitutional policy.

### County On Notice Not To Apply Pistol Standard to Long Arms

51. The application of the SAFE Act provisions related to the impact of the loss of a pistol license was previously addressed in this Court.

52. In 2014 in *Razzano v. State of New York*, 14-CV-1864 (LDW) (E.D.N.Y.), the County stated in open court that a pistol license revocation *would not result in a ban on the possession of rifles or shotguns*.

53. In fact, during oral argument on a TRO application in the 2014 *Razzano* case, the County represented to this Court that it would *not* interpret the SAFE Act to treat pistol license revocation as a bar to ownership of unlicensed rifles and shotguns. David A. Tauster, Esq. stated on behalf of the County:

> I have to apologize to the Court, to my adversaries. I misspoke in the County papers. I think I clarified it later.
>
> But in any event, the issue is not so much whether an individual is not entitled to possess a license pursuant to the SAFE Act by the local licensing officials, it's whether you are ineligible pursuant to the statutory factors set forth in the penal law and federal law.
>
> The idea is not so much that Nassau County can revoke somebody's pistol license and forever prohibit [that individual] from possessing long arms. If one of the mandatory factors occur under the federal law in the first instance, further under State law, the individual would not have been entitled to possess a weapon.
>
> The County is not saying that the statute operates under Nassau County standards but pursuant to the State standards. It's a misstatement of the law in our papers and I apologize to the Court. (*See* Exhibit 4, p. 3, line 19 to p. 4, line 11).

54. Susan M. Connolly, Esq., the attorney for the State of New York in the 2014 *Razzano* case, reaffirmed that having a pistol license revoked ***does not make one ineligible from owning an unlicensed shotgun or rifle under the SAFE Act*** as long as none of the federal law disqualifying factors are present:

> Your Honor, he [Plaintiff Razzano] is revoked [*i.e.*, barred from owning a handgun], not ineligible [to own an unlicensed shotgun or rifle]. He admits that none of the disqualifying factors in State or federal law apply to him; no mental health conditions, he doesn't have an Order or Protection against him, he hasn't been convicted of a serious offense or felony. If any of those things were true about Mr. Razzano, he would be ineligible and he wouldn't be able to own any weapon in any case regardless of the SAFE Act because of the federal and State law. But he admitted none of those factors apply to him, therefore, he is not ineligible.
>
> He would like his interpretation of ineligibility to be accepted by the Court. Revocation doesn't equal ineligible. You can be revoked from having a permit to carry a weapon because of your business. Let's say you are a jeweler, you stop being a jeweler, your permit for carrying a weapon gets revoked. (*See* Exhibit 4, p. 6, lines 7-23).

55. Despite these previous representations made in open court, the County now claims through the Police Department that the SAFE Act supports disqualification from all firearms ownership upon the revocation of a pistol license.

### Henry May Not Possess the Shotgun He Owns Without Risk of Arrest

56. Henry was able to purchase a shotgun (a type of unlicensed long arm) for $509.47 from Michael Britt Firearms located at 89 Mineola Boulevard, Mineola, New York 11501 on July 19, 2017. (*See* Bill of Sale attached as Exhibit 5).

57. On July 19, 2017, Henry passed a National Instant Check System (NICS) background check and was found legally eligible to purchase a long arm. (*See* Exhibit 5).

58. Upon information and belief, the federal NICS background check does not recognize the County's unconstitutional, irrational, discriminatory and unjust policy that the

9

revocation of a citizen's pistol license *privilege* also results in the citizen's loss of all firearms rights.

59. The County's policy that revocation of a citizen's pistol license *privilege* results in the citizen's loss of all firearms (the Policy), as it has done for Henry, is a violation of Henry's rights under the Second Amendment of the United States Constitution because the Policy results in a complete bar to firearms ownership of all types.

60. Henry, a 21-year veteran of the New York City Corrections Department, has extensive training in firearms. Yet under the County's Policy described above, Henry is treated in the same manner as if he were a convicted felon unfit to possess even unlicensed long arms in his home county.

61. The County is estopped judicially from claiming that the SAFE Act requires it to bar a citizen's ownership of all firearms upon the suspension, surrender, or revocation of the citizen's pistol license.

62. Therefore, it is unconstitutional for the County and the Police Department to bar an individual from all firearms ownership upon the individual's loss of a pistol license which is issued at the discretion of the Police where the individual is not otherwise disqualified from owning a firearm under federal law.

### The County's Long History of Violating Individuals' Second Amendment Rights

63. The County has a long history of violating its citizens' rights related to firearms ownership.

64. In *Panzella v. County of Nassau, et al.*, 13-CV-5640 (JMA), 2015 WL 5607750 (E.D.N.Y., August 26, 2015), Ms. Christine Panzella successfully brought suit against the County and the Sheriff's Department as part of a class action lawsuit. The proposed class

members are Family Court litigants who have had their property – unlicensed shotguns and rifles – confiscated by the Defendants, but not returned to class members by Defendants after the Family Court proceeding terminated with no adverse finding against them.

65. In *Panzella*, the County and its Sheriff's Department's policy of "no return of firearms to the owner without a second court order" was successfully challenged as violating citizens' due process rights under the Fourteenth Amendment. *See Panzella*, 2015 WL 5607750, at *7 ("plaintiff's motion for summary judgment against the County on her due process claim concerning the Retention Policy is granted…. The County must hold a due process hearing consistent with the criteria set forth in *Razzano* within 30 days of the date of this decision").

66. *Panzella* was affirmed recently by the United States Court of Appeals, Second Circuit. *See Panzella v. Sposato*, 863 F.3d 210 (2d Cir. 2017). The Court of Appeals affirmed a citizen's right to a prompt hearing before a neutral decision-maker after seizure of her longarm rifles in connection with a Family Court *ex parte* temporary order of protection. The County's refusal to hold a hearing to demonstrate the County's likelihood of success in a civil forfeiture for the firearms action or else promptly the return of her rifles after the order of protection was dismissed violated her Fourteenth Amendment right to due process.

67. For years since the 2011 decision in the first *Razzano* case, and months after the decision in *Panzella*, the County refused to settle the following civil rights cases brought by others similarly situated to *Panzella,* including but not limited to *Dudek v. Nassau County* 2:12-cv-01193, *Schojan v. Nassau County*, 2:16-cv-4790, *Heredia v. Nassau County* 2:16-cv-04, *Hartenstein v. Nassau County*, 2:16-cv-06139, *Stahura v. Nassau County*, 2:17-cv-04677. The County claimed that it "needed time" to enact a return policy a return policy followed by the rest of New York State, even after repeated threats of contempt of court.

11

68. In *Tretola v. County of Nassau*, 14 F.Supp.3d 58 (E.D.N.Y. 2014), the plaintiff gun store owner successfully sued the County for malicious prosecution.

69. In *Sanseviro v. Rice,* 158 F.Supp.3d 131 (E.D.N.Y. 2016), *aff'd*, 2017 WL 1241934 (2d Cir. 2017), Sanseviro, a retired police officer, filed a civil rights action over his arrest for selling rifles over the counter at a federally licensed gun dealer. The police modified the condition of the rifle after sale with tools to create illegal features, and then went back to arrest Sanseviro, along with others.

70. The County and the County District Attorney Kathleen Rice bragged in its press release and press conference that "DA Rice Busts Five Nassau Gun Shops for Selling Illegal Assault Weapons." In fact, all arrests were either adjourned in contemplation of dismissal or dismissed outright by the Grand Jury.

71. Defendants have mistreated for decades Nassau County residents in the Family Court system. Defendants are or should have been aware that its decades' old policy to ignore a Family Court order of dismissal as triggering the County's obligation to return promptly firearms, and the County's requesting residents to sue the Sheriff to obtain their own non contraband property back, was unconstitutional. *See Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002); *County of Nassau v. Canavan*, 1 N.Y.3d 134 (2003); *Razzano v. County of Nassau*, 765 F.Supp.2d 176, 178 (E.D.N.Y. 2011); *Dudek v. Nassau County Sheriff's Dep't*, 991 F. Supp.2d 402, 405 (E.D.N.Y. 2013).

72. Indeed, as recently as earlier this year in the *Panzella* case, the County claimed in its brief before the Second Circuit that numerous trial and appellate courts have never directed the Nassau County Sheriff's Office to return an individual's longarms after a Family Court temporary order of protection was vacated. That representation was false.

12

73. The County has been directed numerous times by courts over the years to return individual's firearms property after a Family Court temporary order of protection had been vacated.[1]

74. The Defendant County, through its Police Department, Defendant former Acting Commissioner Krumpter, Defendant Acting Commissioner Ryder, and John Does #1-3 and Jane Does #1-3, as employees of the Police Department's Pistol License Section, knowingly created, continued, implemented, preserved or maintained a serious of deliberate unconstitutional policies, including the Policy in this matter, which either have already been declared unconstitutional or are clearly unconstitutional, as in the present case.

75. The continued violation of Plaintiff Henry's rights to possess the shotgun he purchased represents a continuing willful and intentional violation of a fundamental right protected by both the Federal and State Constitutions under the Second Amendment.

**The County Fails to Provide a Prompt
Review of the Revocation of Plaintiff's Pistol License**

76. On May 5, 2015, Plaintiff Henry wrote the Pistol License Section of the Defendant Police Department and requested reinstatement of his firearm privileges.

---

[1] *See, e.g., Alexander Horlein v. Nassau County Sheriff*, Index No. 11935/2003 (Sup. Ct. Nassau) ("it is hereby ordered that the Nassau County Sheriff is to release all firearms owned by petitioner forthwith"); *Christopher Bahntge v. Nassau County Sheriff's Department*, Index No. 5642/2007 (Sup. Ct. Nassau) ("this Court … grants the petitioner's application pursuant to CPLR article 78 for an order directing the release of 26 firearms previously seized by the respondent, Nassau County Sheriff's Department"); *Mathie v. Nassau County Sheriff's Department*, Index No. 18482/2007 (Sup. Ct. Nassau) ("the petition is granted and therefore, the respondent, the Nassau County Sheriff's Department, is directed to return to the petitioner … his firearms"); *Mark Solomon v. Thomas Suozzi, et al.*, Index No. 010253/2003 (Sup. Ct. Nassau) ("since it has been adequately established that the Family Court Order of Protection has been vacated, the burden of proving entitlement to retain the surrendered property rests upon respondent").

77. Similarly, on October 17, 2016, Plaintiff Henry wrote the Pistol License Section of the Defendant Police Department yet again, and requested an appeal of his pistol license revocation.

78. To date, over one year has passed and Plaintiff Henry has not received instructions regarding the appeal process from the Pistol License Section of the Defendant Police Department.

79. Upon information and belief, *Razzano* binds the Defendant County and its subdivisions and agencies such as Defendant Police Department and the individual Defendants to create a system to "promptly" return confiscated firearms to citizens capable of owning, possessing or buying a firearm, such as Plaintiff Henry. *See Panzella v. Sposato,* 863 F.3d 210, 219 (2d Cir. 2017) (*citing Razzano*); *Razzano v. County of Nassau*, 765 F. Supp. 2d 176, 191 (E.D.N.Y. 2011).

80. More specifically, the creation, continuance, implementation, preservation or maintenance of the Policy affects a fundamental Constitutional right, which has been deliberately violated by Defendants again and again.

81. To date, Plaintiff Henry's firearms have not been returned to him.

82. To date, Plaintiff Henry has had no decision in his administrative appeal of his pistol license revocation.

83. Plaintiff Henry is under no restriction that would prevent him from purchasing a new longarm.

84. The unconstitutional Policy implemented by the Defendants has caused the Plaintiff to suffer a deprivation of his Second Amendment rights, and an unacceptable delay in review and determination of his pistol license appeal.

85. Upon information and belief, unless the Policy is changed, Plaintiff will suffer the loss, destruction or permanent surrender of his personal property.

## FIRST CLAIM
### (42 U.S.C. § 1983 – Violation of Plaintiff's Second Amendment Right to Bear Arms Against All Defendants)

86. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 85 above as if fully set forth herein.

87. As set forth below, Defendants are infringing Plaintiff Henry's Second Amendment rights, and other rights afforded constitutional protection under the Federal and State Constitutions.

88. Ownership of firearms by individuals legally entitled to own or possess those firearms is a basic fundamental right protected by the Second Amendment of the United States Constitution.

89. Plaintiff is legally entitled to own and possess long arms, including his recently purchased shotgun.

90. However, Defendants are denying Plaintiff his right to possess any firearms, including his recently purchased shotgun.  (*See* Exhibit 3).

91. Plaintiff was not aware that the Policy implemented by the Defendants is not a bar from purchasing, owning, or possessing long arms.

92. As a result, Defendants are interfering with and infringing upon Plaintiff Henry's ability to exercise his Second Amendment rights.

93. By reason of the foregoing, Plaintiff seeks a declaratory judgment, temporary, preliminary and permanent injunctive relief and monetary damages for violation of his Second Amendment rights.

## SECOND CLAIM
### (42 U.S.C. § 1983 – *Monell Claim* Against All Defendants)

94. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 93 above as if fully set forth herein.

95. The County has created, implemented, continued, maintained and enforced the Policy, under which owners of pistols are in jeopardy of losing their right to own or possess all types of firearms as a result of the revocation of a pistol license.

96. This Policy is implemented by the County through its administrative agencies such as the Police Department, former Acting Commissioner Thomas Krumpter, Current Acting Commissioner Patrick Ryder, and John Does #1-3 and Jane Does #1-3, as employees of the Pistol License Section of the Defendant Police Department.

97. The existence of the Policy was denied in open court during the 2014 *Razzano* case by the Nassau County Attorney's Office in order to avoid a preliminary injunction related to the registry under the SAFE Act.

98. Even so, Defendant County and its administrative arm, Defendant Police Department, implemented the exact, unconstitutional Policy which was repudiated in open Court.

99. The implementation and continued existence of this Policy has caused severe emotional distress and financial injuries to Plaintiff Henry, and placed all others similarly situated in jeopardy.

100. The implementation and continued existence of this Policy has deprived Plaintiff Henry of his constitutional rights.

101. The implementation and continued existence of this Policy has caused Plaintiff Henry at a significant monetary cost to retain private legal counsel to have his legally-owned firearms returned to him.

102. By reason of the foregoing, Plaintiff seeks a declaratory judgment, temporary, preliminary and permanent injunctive relief and monetary damages for violations under *Monell*.

## THIRD CLAIM
### (42 U.S.C. § 1983 – Punitive Damages Against the County and Police Department)

103. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 102 above as if fully set forth herein.

104. Upon information and belief, Defendants' policy demonstrates callous indifference to the 2nd Amendment Rights of its citizens.

105. For example, the Defendants demonstrated callous indifference to the directive to implement a return policy after the Razzano decision in 2011.

106. Further, the Defendants demonstrated callous indifference to the rights of those affected by the *Panzella* decision in 2017 and again failed to implement a return policy to follow the statutory return policy followed thought out New York State to promptly return non - contraband longarms to their rightful owner.

107. Upon information and belief, Defendants conducted themselves with reckless or callous indifference to the federally protected rights of the Plaintiff.

108. Upon information and belief, Defendants conducted themselves with the purpose, intent or effect of depressing the number of pistol licenses in the County of Nassau.

109. By reason of the foregoing, Henry is entitled to recover punitive damages against the County and the Police Department.

## FOURTH CLAIM
### (42 U.S.C. § 1988(b) – Legal Fees Against All Defendants)

110. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 109 above as if fully set forth herein.

111. As a direct result of the Defendants' continued retention of Plaintiff Henry's firearms without proper cause or legal authority to do so, Plaintiff has incurred significant legal fees in order to regain possession of his property.

112. By reason of the foregoing, Plaintiff Henry seeks damages from all Defendants pursuant to 42 U.S.C. § 1988(b), in an amount this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury of all issues raised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

a) First Claim: Awarding Plaintiff in excess of $5,000,000.00 in damages; declaratory judgment, temporary, preliminary and permanent injunctive relief and monetary damages for violation of his Second Amendment rights.

b) Second Claim: Awarding Plaintiff in excess of $5,000,000.00 in damages; declaratory judgment, temporary, preliminary and permanent injunctive relief and monetary damages for violations under *Monell*.

c) Third Claim: Awarding Plaintiff punitive damages in excess of $5,000,000.00, or in an amount this Court deems just and proper;

d) Fourth Claim: Awarding Plaintiff attorneys' fees, costs and disbursements of bringing this action pursuant to 42 U.S.C. § 1988(b) in an amount this Court deems just and proper.

e) A declaratory judgment that Defendants willfully violated Plaintiff's rights secured by the Federal and State Constitutions, including but not limited to the Second Amendment as alleged herein;

  f) An Order requiring Defendant Nassau County and Defendant Police Department (i) to cease enforcing the Policy, which is tantamount to a complete bar to firearms ownership for those pistol licensees who have their pistol license revoked: (ii) to notify or compensate all those affected by the unconstitutional Policy since its inception, and (iii) to institute a fair and adequate procedure for the handling of pistol license appeals in a prompt manner that does not violate the due process requirements of the Federal and State Constitutions; and

  g) For such further legal and/or equitable relief as this Court deems just and proper.

Dated: Garden City, New York  
   November 7, 2017

            La REDDOLA, LESTER  
             & ASSOCIATES, LLP

          By: s/ Steven M. Lester  
           Steven M. Lester  
           Robert J. La Reddola  
           *Attorneys for Plaintiff*  
           600 Old Country Road – Suite 230  
           Garden City, New York 11530  
           (516) 745-1951