Robert J. La Reddola, Esq.
Steven M. Lester, Esq.
La REDDOLA, LESTER & ASSOCIATES, LLP
Attorneys for Plaintiff
600 Old Country Road, Suite 230
Garden City, New York 11530
(516) 745-1951
rjl@llalawfirm.com
sml@llalawfirm.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

LAMBERT HENRY,                                  Case No. 17-CV-06545 (DRH)(AKT)

                          Plaintiff,            **THIRD AMENDED**
                                                **COMPLAINT**
          -against-
                                                **Jury Trial Demanded**
COUNTY OF NASSAU and NASSAU
COUNTY POLICE DEPARTMENT, former
Acting Commissioner THOMAS KRUMPTER,
Commissioner PATRICK RYDER, Lieutenant
MARC TIMPANO, Sergeant ADAM FISCHER,
Deputy Sheriff STEPHEN TRIANO, Deputy
Sheriff JEFFERY KUCHEK, Deputy Sheriff
MARK SIMON, And Deputy Sheriff
JEFFREY TOSCANO,

                          Defendants.

---------------------------------------------------------X

        Plaintiff Lambert Henry, by his attorneys, La Reddola, Lester & Associates, LLP, for his

Complaint against the Defendants, alleges:

                               **Nature of the Action**

        1.      This is a civil rights action for a declaratory judgment, monetary damages, and

injunctive relief.  Plaintiff Lambert Henry seeks monetary damages under 42 U.S.C. § 1983 for

the violation by Defendants of his Second Amendment right to possess any firearm, including a

pistol, rifle or shotgun, based upon Defendants' policy or practice to deter ownership of all

firearms and with the intention and effect of reducing pistol license ownership, most especially in the non-white communities of Nassau County.

**Jurisdiction and Venue**

2.      This Court has jurisdiction of this action under 28 U.S.C. § 1331.  This action arises under the Constitution and Laws of the United States and under 28 U.S.C. § 1343(a)(3)-(4) in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of New York, of rights, privileges or immunities guaranteed to the Plaintiff under the Second Amendment of the United States Constitution.

3.      This action is also to remedy the discrimination in the issuance and administration of the Nassau County Pistol License laws based upon race, ethnicity and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 200 e, *et. seq*., 42 U.S.C.  §1981, 42 U.S.C. §1983 and 1988.

4.      This action seeks declaratory judgment, injunctive relief and compensatory and punitive damages to secure future protection and to redress the past deprivations of rights secured to the Plaintiff under state and federal law.

5.      Pursuant to New York General Municipal Law §50-e and §50-1, Plaintiff filed a Notice of Claim and more than 90 days have elapsed since the service of the Notice of Claim upon the Defendants and compliance, adjustment or payment thereof has been neglected or refused.  A copy of the Notice of Claim is attached as Exhibit 1.

6.      Venue in this judicial district is proper under 28 U.S.C. §1391(b), since all of the events and omissions giving rise to the Plaintiff's claims arose in Nassau Country and in this judicial district.  Moreover, upon information and belief, all parties currently reside or maintain offices in Nassau County.

2

## Parties

7.      Plaintiff Lambert Henry is a citizen of the State of New York, a resident of Nassau County, residing at 118 Shaw Avenue, Valley Stream, New York 11580.

8.      Upon information and belief, Defendant County of Nassau (the County or Nassau County) is a duly constituted municipal corporation of the State of New York, existing and operating under and by virtue of the laws of the State of New York.

9.      Upon information and belief, Defendant Nassau County Police Department (the Police Department) is an administrative arm of the County with offices located at 1490 Franklin Avenue, Mineola, New York.

10.     Upon information and belief, Defendant Nassau County Sheriff's Department (the Sheriff's Department) is an administrative arm of the County with offices located at 1490 Franklin Avenue, Mineola, New York.

11.     Upon information and belief, Defendant Thomas Krumpter (Krumpter) was at all relevant times the former Acting Commissioner of the Police Department with an office located at 1490 Franklin Avenue, Mineola, New York.

12.     Upon further information and belief, Krumpter has retired from the Police Department.

13.     Upon information and belief, Defendant Patrick Ryder (Ryder) is the current Commissioner of the Police Department with an office located at 1490 Franklin Avenue, Mineola, New York.

14.     Upon information and belief, at the time of the events giving rise to this action and continuing to this day, Defendant Lieutenant Marc Timpano is an employee of the County in the Police Department's Pistol License Section.

15.     Upon information and belief, at the time of the events giving rise to this action and continuing to this day, Defendant Sergeant Adam Fischer is an employee of the County in the Nassau County Sheriff's Department.

16.     Upon information and belief, at the time of the events giving rise to this action and continuing to this day, Defendant Deputy Sheriff Stephen Triano is an employee of the County in the Nassau County Sheriff's Department.

17.     Upon information and belief, at the time of the events giving rise to this action and continuing to this day, Defendant Deputy Sheriff Jeffery Kuchek is an employee of the County in the Nassau County Sheriff's Department.

18.     Upon information and belief, at the time of the events giving rise to this action and continuing to this day, Defendant Deputy Sheriff Mark Simon is an employee of the County in the Nassau County Sheriff's Department.

19.     Upon information and belief, at the time of the events giving rise to this action and continuing to this day, Defendant Deputy Sheriff Jeffrey Toscano is an employee of the County in the Nassau County Sheriff's Department.

20.     Defendants Fischer, Triano, Kuchek, Simon and Toscano together are referred to herein as "the Deputy Sheriffs."

21.     All Defendants herein are being sued in both their official and individual capacities.

## Factual Background: Initial Unauthorized Removal of Firearms

22.     On October 20, 2014, Plaintiff Henry's daughter Brittney Janesse Henry commenced a case against him in the Family Court of the State of New York, County of Nassau (Family Court).

23.     The case arose when Plaintiff Henry's daughter went to Family Court after an argument with Plaintiff about her school grades.

24.     Also on October 20, 2014, an *Ex Parte* Temporary Order of Protection (the Order) was issued against Plaintiff Henry by Hon. Frank D. Dikranis of the Family Court.  A copy of the Order is attached as Exhibit 2.

25.     Pursuant to Judge Dikranis's Order, Henry was ordered to:

> [02] Refrain from assault, stalking, harassment, aggravated
> harassment, menacing, reckless endangerment, strangulation,
> criminal obstruction of breathing or circulation, disorderly
> conduct, criminal mischief, sexual abuse, sexual misconduct,
> forcible touching, intimidation, threats, identity theft, grand
> larceny, coercion or any criminal offense against Brittney Janesse
> Henry (DOB: 06/14/1995).  (*See* Exhibit 2, p. 2).

26.     Pursuant to its terms, the Order was to remain in full force and effect until and including April 19, 2015.

27.     However, the Order did **not** contain the form provision requiring Plaintiff Henry to surrender his handguns, pistols, shotguns and other firearms.  The form provision that was **not** contained in the Order directs a Family Court respondent to:

> [12] Surrender any and all handguns, pistols, revolvers, rifles,
> shotguns and other firearms owned or possessed, including, but not
> limited to, the following: any and all firearms and do not obtain
> any further guns or other firearms. Such surrender shall take place
> immediately, but in no event later than immediately at local police
> precinct.

28. On October 23, 2014 between 9:30 p.m. and 10:00 p.m., and after Plaintiff Henry had gone to bed for the night, approximately four Nassau County Deputy Sheriffs served Henry with the Order at his home.

29. The Deputy Sheriffs did not have a search warrant to enter and search Henry's home.

30. The Deputy Sheriffs did not have authority to demand the production of any firearms or firearms license.

31. The Deputy Sheriffs involved in the incident include, but are not limited to the following Defendants; Deputy Sheriff Stephen Triano, Deputy Sheriff Jeffery Kuchek, Deputy Sheriff Mark Simon and Deputy Sheriff Jeffrey Toscano.

32. As a retired New York City Corrections Officer, Henry was and is still well aware of his rights under the law as they relate to firearms.

33. Upon information and belief, the Deputy Sheriffs were authorized only to serve the Order and related Family Court papers on Henry and they were to depart.

34. The Deputy Sheriffs had no other legal authority.

35. The Deputy Sheriffs had no authority to inquire if Henry was a gun owner.

36. The Deputy Sheriffs came to the door and told Henry's ex-wife, Kim Kennedy Henry, with whom Plaintiff Henry resides, that they wanted to speak with Henry.

37. Henry opened the front door to his residence when the Deputy Sheriffs identified themselves as agents of the Nassau County Sheriff's Department.

38. As soon as Henry opened the door, all of the Deputy Sheriffs entered Henry's home.

39. Henry did not consent permit the intrusion by the Deputy Sheriffs into his home.

40.     The Deputy Sheriffs told Henry that he was being served with a Summons to appear in Family Court for a Temporary Order of Protection hearing and that he was to appear in Family Court on the return date indicated on the Summons.

41.     It was at this time that Plaintiff Henry identified himself to the Deputy Sheriffs as a retired New York City Corrections Officer.

42.     Henry observed that the Order contained no provision for the removal of firearms. (*See* Exhibit 2 hereto).

43.     Despite the absence of a firearms removal provision in the Order, the Deputy Sheriffs demanded that Plaintiff Henry produce for the Deputy Sheriffs all of his firearms for removal from Henry's residence.

44.     Although Henry strongly disagreed with the confiscation of his handguns and/or handgun license by the Deputy Sheriffs, he complied with their demands.

45.     Henry did not physically obstruct the unauthorized and involuntary confiscation of his handguns and or license by the Deputy Sheriffs.

46.     When the Deputy Sheriffs inquired as to whether Henry had any other weapons in his home, such as rifles or shotguns, he responded accurately that he did not possess or own any other firearms.

47.     On the March 12, 2015 return date, the Order was dismissed.

48.     However, Henry's handguns were not returned to him at that time.

**Nassau County Police Department Misconduct Regarding Handguns**

49.     Henry possessed a Penal Law §400.00(2)(f) concealed carry license granted by the County of and the Police Department.

50.     On or about October 12, 2016, Henry received a Notice of Pistol License Revocation (the Revocation Notice) from the Police Department's Pistol License Section.  (A copy of the Revocation Notice is attached as Exhibit 3).

The letter states:

> "The licensee must wait a minimum of five (5) years from the date of revocation or from the date of the appeal decision upholding revocation, whichever is later, before submitting a new, full application for a pistol license."  (*See* Exhibit 3).

51.     On or around November 16, 2016 Plaintiff appealed his pistol revocation to the Police Department.

52.     On or around January 24, 2018, Police Department issued its Decision on Appeal upholding the revocation.  (*See* Exhibit 6).

53.     Upon information and belief, no good cause exists to revoke Henry's pistol license.

54.     Upon information and belief, the impetus of the revocation resulted from the service of the Ex Parte Temporary Order of Protection on October 23, 2014, where the County and Deputy Sheriffs Stephen Triano, Deputy Sheriff Jeffery Kuchek, Deputy Sheriff Mark Simon and Deputy Sheriff Jeffrey Toscano wrongfully, improperly, maliciously and with ill intent and in excess of their duty to serve papers demanded removal of Plaintiff's firearms and pistol license.

55.     Under New York Penal Law §400 *et seq.*, the County and the Police Department administer the rules and regulations regarding pistol licenses limited to granting, revoking and/or reinstating licenses.

56.     Upon information and belief, the County and the Police Department believe the possession of a pistol license to be a privilege.

57.     Upon information and belief, the County and the Police Department make determinations on whether or not a pistol license should be granted, suspended or revoked under a standard of "proper cause" under New York Penal Law §400.00(2)(f).

58.     Upon information and belief, the County and the Police Department make determinations on renewals of Nassau County Pistol Licenses without legal authority under Penal Law § 400.

59.     Upon information and belief, the Police Department administers approximately 28,000 pistol licenses which renew every five years, or over 5,000 renewals a year.

60.     Upon information and belief, renewals are the largest portion of the workload of the Police Department Pistol License Section.

61.     Upon information and belief, the New York State Police Department are designated to administer pistol license renewals using an online renewal program at https://firearms.troopers.ny.gov/pprecert/welcome.faces.

62.     Penal Law §400.00(10)(b) provides:

> (b) All licensees shall be recertified to the division of state police every five years thereafter. …Such recertification shall be in a form as approved by the superintendent of state police, which shall request the license holder's name, date of birth, gender, race, residential address, social security number, firearms possessed by such license holder, email address at the option of the license holder and an affirmation that such license holder is not prohibited from possessing firearms.  The form may be in an electronic form if so designated by the superintendent of state police. Failure to recertify shall act as a revocation of such license.  If the New York state police discover as a result of the recertification process that a licensee failed to provide a change of address, the New York state police shall not require the licensing officer to revoke such license.

63.     Upon information and belief, the County and the Police Department have no authority regarding renewals, but only to grant, revoke or reinstate licenses.

64. Upon information and belief, the Police Department misuse the unauthorized renewal process to depress the number of pistol license holders by revoking, downgrading and otherwise harassing licensees as part of its policy to depress and limit the number of pistol licenses and the ownership of firearms.

65. Upon information and belief, there is no license required for a rifle or shotgun in New York State or Nassau County.

66. Nassau County and the Police Department do not have authority to modify locally the interpretation of Penal Law §400.00(11), a section of the Penal Law related to pistol licenses, so as to extend it to regulation of rifles and shotguns.

67. Accordingly, an individual such as Henry does not need to demonstrate proper cause to own or possess a rifle or shotgun.

68. However, according to the Revocation Notice, the County asserts that based upon N.Y. Penal Law §400 and the SAFE Act, Henry is "prohibited from possessing firearms, rifles and shotguns" as a result of the revocation of his pistol license.  (*See* Exhibit 3).

69. The County unconstitutionally claims that under the SAFE Act, since Henry's pistol license has been revoked, he is barred from **possessing or owning any firearms**, including rifles or shotguns, based solely upon the revocation.  (*See* Exhibit 3, p. 1 ("As directed by New York State Penal Law §400, and the New York State Secure Ammunitions and Firearms Enforcement Act, you are prohibited from possessing firearms, rifles, [and] shotguns")).

70. The County has claimed, in Court, in response to this action to have reformed its unconstitutional local policy that asserts a loss of a County pistol license requires surrender of all longarms under Penal Law §400.00(11).

71.     However, as late as February 7, 2019, a Pistol License Revocation Letter was issued to another County licensee with the same unconstitutional local rule related to Penal Law § 400.00(11).  The recently issued Pistol Revocation Letter stated:

> "You must surrender your pistol license and handguns to the pistol license section.  Additionally, any rifles and or shotguns in your possession must also be surrendered to the pistol license section pursuant to NYS PL 400.00(11)."

(*See* Exhibit 14).

72.     Despite statements made by the County in Court that it has revised its interpretation of Penal Law §400.00(11) to comport to New York State Law and the United States Constitution, the County and the Police Department continue to create an unconstitutional and unlawful local restriction for Nassau County pistol licensees.

73.     This Court in a Report and Recommendation recently recognized in *Napolitano v. Ryder,* 18-cv-03607 (E.D.N.Y. January 30, 2019):

> "The Court recognizes that pursuant to New York Penal Law §400.00(11)(a) "a [pistol] license may be revoked and cancelled at any time in . . . counties of Nassau and Suffolk, by the licensing officer, " and if this happens, "such person shall surrender such license to the appropriate ;licensing officer, " and if this happens, "such person shall surrender such license to the appropriate licensing official and any and all firearms, rifles, or shotguns owned or possessed by such person shall be surrendered to an appropriate law enforcement agency. " Id. (11)(c), **This would appear to impose, in certain circumstances, a *de facto* license requirement on longarms.  However, as the Court has discussed, multiple cases have upheld the constitutionality of this portion of § 400.00(11) specifically.**

*Id*. Pg. 19, footnote 6.

74.     Upon information and belief, **none** of the cases cited in *Napolitano v. Ryder* have upheld the portion of §400.00(11) whereby the County has created a local interpretation of Penal

Law §400.00(11) such that the loss of a County pistol license results in the loss of all firearms rights.

75.       In fact, in each and every case brought on the exact subject cited in *Napolitano* or otherwise, such as *Panzella v. County*, 2015 WL 5607750 (E.D.N.Y., 2015), *aff'd* 863 F.3d 210 (2nd Cir. 2017), and others, the Plaintiffs were able to purchase a new longarm under federal law in New York City, Nassau County, Suffolk County or anywhere else by passing a Federal National Instant Background Check even after the County had declared them ineligible to possess a longarm.

76.       This results because Penal Law §400.00(11), as applied in each and every County besides Nassau County, follows the guidance of the New York State Attorney General and New York State Police which **do not** expand the authority of police departments or government officials beyond the normal disqualifying events under federal law such as, but not limited to, the following:

> 18 U.S.C. § 922(g)(1) which disqualifies a person convicted of a felony punishable by a term of more than one year whether or not that sentence was imposed or any state law classified as a misdemeanor that is punishable by more than two years incarceration.

> 18 U.S.C. § 922(g)(2) A person who is a fugitive from justice is prohibited from possession of a firearm; and

> 18 U.S.C. § 922 (g)(3), Individuals who are current unlawful users of controlled substances are prohibited from possession of a firearm.

**County On Notice Not To Apply Pistol Standard to Long Arms**

77.       The application of the SAFE Act provisions of Penal Law §400.00(11) as it relates to the impact of the loss of a pistol license on an individual's right to own or possess longarms was previously addressed by this Court in 2014 in *Razzano v. State of New York*, 14-CV-1864 (LDW) (E.D.N.Y.).  *Razzano* was a case directly involving the newly enacted SAFE

Act, and this very provision, where the County stated in open court that a pistol license

revocation *would not result in a ban on the possession of rifles or shotguns*.

78.     In fact, during oral argument for a Temporary Restraining Order in the 2014

*Razzano* case, the County represented to this Court that it would *not* interpret the SAFE Act to

treat pistol license revocation as a basis to confiscate unlicensed rifles and shotguns.  David A.

Tauster, Esq. stated on behalf of the County:

> I have to apologize to the Court, to my adversaries.  I misspoke in
> the County papers.  I think I clarified it later.
>
> But in any event, the issue is not so much whether an individual is
> not entitled to possess a license pursuant to the SAFE Act by the
> local licensing officials, it's whether you are ineligible pursuant to
> the statutory factors set forth in the penal law and federal law.
>
> The idea is not so much that Nassau County can revoke
> somebody's pistol license and forever prohibit [that individual]
> from possessing longarms.  **If one of the mandatory factors
> occur under the federal law in the first instance, further under
> State law, the individual would not have been entitled to
> possess a weapon.**
>
> **The County is not saying that the statute operates under
> Nassau County standards but pursuant to the State standards.
> It's a misstatement of the law in our papers and I apologize to
> the Court.  (***See*** Exhibit 4, p. 3, line 19 to p. 4, line 11).**

79.     Susan M. Connolly, Esq., the attorney for the State of New York in the 2014

*Razzano* case, reaffirmed that having a pistol license would *not automatically make one*

*ineligible from owning an unlicensed shotgun or rifle under 400.00(11) the SAFE Act* as long

as none of the federal law disqualifying factors are present:

> Your Honor, he [Plaintiff Razzano] is revoked [*i.e.*, barred from
> owning a handgun], not ineligible [to own an unlicensed shotgun or
> rifle].  He admits that none of the disqualifying factors in State or
> federal law apply to him; no mental health conditions, he doesn't
> have an Order or Protection against him, he hasn't been convicted of
> a serious offense or felony.  If any of those things were true about

> **Mr. Razzano, he would be ineligible and he wouldn't be able to own any weapon in any case regardless of the SAFE Act because of the federal and State law.  But he admitted none of those factors apply to him, therefore, he is not ineligible.**
>
> He would like his interpretation of ineligibility to be accepted by the Court.  Revocation doesn't equal ineligible.  You can be revoked from having a permit to carry a weapon because of your business.  Let's say you are a jeweler, you stop being a jeweler, your permit for carrying a weapon gets revoked.  (*See* Exhibit 4, p. 6, lines 7-23).

80.    Despite these previous representations made in open Court, the County now has sought to extend its authority in direct contradiction to its prior position.  The County claims now in 2019, Penal Law § 400.00(11) supports an independent grounds for automatic disqualification from all firearms ownership upon the revocation of a pistol license in Nassau County.[1]

81.    Moreover, Penal Law §400.00 contains a prohibition against unconstitutional local laws related to the issuance of pistol license.

82.    According to Penal Law §400.00, Section 6:

> Any license issued pursuant to this section shall be valid **notwithstanding the provisions of any local law or ordinance**.  No license shall be transferable to any other person or premises.  **A license to carry or possess a pistol or revolver, not otherwise limited as to place or time of possession, shall be effective throughout the state,** except that the same shall not be valid within the city of New York unless a special permit granting validity is issued by the police commissioner of that city.

83.    This limitation on the authority of the Nassau County Police Commissioner has meant that, notwithstanding the local limitations in Nassau County imposed on pistol license owners, a license to carry or possess a pistol or revolver issued in Nassau County is treated throughout the state as a traditional New York State carry license under Penal Law §400.00(2)(f).

---

[1] Thus, pistol licensees are at a unique risk of losing all firearms rights.  Non-pistol license owners – owners of rifles and/or shotguns – do not face the same threat.

84.    Excluding New York City, only Nassau County, Suffolk County and Westchester County do not grant concealed carry licenses under Penal Law §400.00(2)(f) to the majority of applicants.

85.    The Nassau County and Nassau County Police Pistol License rules related to issuance, renewal and revocation of a Nassau County Pistol License are anachronistic, unique, arbitrary and capricious, and add local restrictions such as "target/hunting" not recognized in Penal Law § 400.00; and omit home/premises licenses under Penal Law § 400.00(2)(a).

86.    The loss of a Nassau County pistol license *privilege* issued under Penal Law §400.00(2)(f) is not a lawful or even reliable basis to justify the entire loss of longarm rights, or loss of the right to possess a pistol in the home under Penal Law § 400.00(2)(a), which is a constitutional right under the Second Amendment based upon the U.S. Supreme Court's ruling in *District of Columbia v. Heller*.

### **Henry Is Prevented From Possessing the Shotgun He Owns Without Risk of Arrest**

87.    Henry's date of birth is March 30, 1964.  Henry is at present 54 years old.

88.    Henry is an African American male.

89.    Henry was able to purchase a pump action shotgun (a type of unlicensed long arm) for $509.47 from Michael Britt Firearms located at 89 Mineola Boulevard, Mineola, New York 11501 on July 19, 2017.  (*See* Bill of Sale attached as Exhibit 5).

90.    On July 19, 2017, Henry passed a National Instant Check System (NICS) background check and was found legally eligible to purchase a longarm.

91.    Upon information and belief, the federal NICS background check does not recognize the County's unconstitutional, irrational, discriminatory and unjust County and Police policy that the revocation of a County pistol license also results in a loss of all firearms rights.

92.     Upon information and belief, the Federal NICS background check does not recognize the Police Department's and Nassau County's local limitation on the proper cause subsection (2)(f) pistol licenses.  These proper cause licenses are considered universally as conceal carry licenses throughout New York State, excluding Westchester County, Suffolk County and New York City.

93.     Upon information and belief, the federal NICS background check does not recognize the County's unconstitutional, irrational, discriminatory and unjust Nassau County and Police Department policy that permits a local interpretation of Penal Law §400.00(11).  This policy is used to support Nassau County's unconstitutional and discriminatory application of its authority to promulgate rules under Penal Law §400.00.

94.     Henry is an African American, a 21-year veteran of the New York City Corrections Department, and has extensive training in firearms.  Yet under the County's Policy described above, Henry is treated in the same manner as a convicted felon, fugitive from justice, or controlled substance user by being deemed by the County as unfit to possess any firearms in his home county, Nassau County.

95.     The County is estopped factually and judicially from claiming in 2019 that the SAFE Act § 400.00(11) permits automatic disqualification from all firearms ownership upon the revocation of a pistol license in Nassau County based upon its prior pronouncements in Court related to the SAFE Act.

96.     Moreover, the County has exceeded its authority by creating unconstitutional, illegal, and unauthorized local rules effective only in the County of Nassau.  The County has violated the Second Amendment rights of its citizens by this unconstitutional policy, which bars Nassau County citizen's ownership of all firearms upon the suspension, surrender, or revocation

of the citizen's pistol license, and creates a five year "debarment" for applications, and otherwise demonstrates hostility towards handgun licensees.

97.     Nassau County citizens such as Plaintiff are and continue to be provided with fewer rights than others in other New York counties under Penal Law §400.00, especially in the African American community, Hispanic community and other non-white communities.

98.     Nassau County residents who may not qualify for the Penal Law §400.00(2)(f) pistol license "to have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof" are excluded from consideration for the Penal Law §400.00(2)(a) to "have and possess in his dwelling by a householder" pistol license because the County and the Police Department do not allow such a license.

99.     By ignoring the Penal Law §400.00(2)(a) home premises option on its pistol license application and handbook, and by failing to issue homeowner based licenses for those who do not wish a full concealed carry license under Penal Law §400.00(2)(f), the County and the Police Department have "raised the bar" for all pistol license applications, and deprived citizens of the core protection of the Second Amendment offered by Penal Law § 400.00(2)(a) and *District of Columbia v. Heller*.

100.     Under the present system, the form of the pistol license application used by the Police Department and the County requires every applicant to apply for a concealed carry license under N.Y. Penal Law §400.00(2)(f), which is a privilege.

101.     Accordingly, this type of application form must be strictly scrutinized, since it is rarely granted by the Police Department, and is often revoked at the whim of the Police Department and County.

102.    Once issued under Penal Law § 400.00(2)(f), the County and the Police Department then add a local restriction on the unrestricted pistol carry license by marking the pistol license "target/hunting."  Thereafter, the Police Department and County claim to have the right to confiscate or demand the surrender of all longarms upon revocation of the pistol license.

103.    The local restrictions placed on pistol licenses by the Nassau County Police are not recognized under Penal Law §400.00(6) and are of no effect statewide.

104.    Therefore, it is unconstitutional for the County and the Police Department to bar an individual from all firearms ownership by a local law based upon and individual's loss of a Penal Law §400.00(2)(f) concealed carry pistol license, which is issued at the discretion of the Police Department where the individual is not otherwise disqualified from owning a firearm under federal law.

**The County's Long History of Violating
<u>Individuals' Second Amendment Rights</u>**

105.    The County has a long history of violating its citizens' rights related to firearms ownership.

106.    In *Panzella v. County of Nassau, et al.*, Ms. Christine Panzella successfully brought suit against the County and the Sheriff's Department as part of a class action lawsuit. The proposed class members are Family Court litigants who have had their property – unlicensed shotguns and rifles – confiscated by the Defendants, but not returned to class members by Defendants after the Family Court proceeding terminated with no adverse finding against them.

107.    In *Panzella*, the County and its Sheriff's Department's policy of "no return of firearms to the owner without a second court order" was successfully challenged as violating citizens' due process rights under the Fourteenth Amendment.  *See Panzella*, 2015 WL 5607750, at *7 (E.D.N.Y. August 26, 2015) ("plaintiff's motion for summary judgment against the County

18

on her due process claim concerning the Retention Policy is granted…. The County must hold a due process hearing consistent with the criteria set forth in *Razzano* within 30 days of the date of this decision").

108.   *Panzella* was affirmed recently by the United States Court of Appeals, Second Circuit. *See Panzella v. Sposato*, 863 F.3d 210 (2d Cir. 2017). The Court of Appeals affirmed a citizen's right to a prompt hearing before a neutral decision-maker after seizure of her longarm rifles in connection with a Family Court *ex parte* temporary order of protection. The County's refusal to hold a hearing to demonstrate its likelihood of success in a civil forfeiture proceeding for the firearms or else promptly return the rifles after the order of protection was dismissed violated her Fourteenth Amendment right to due process.

109.   For years since the 2011 decision in the first *Razzano* case*,* and months after the decision in *Panzella*, the County refused to settle the following civil rights cases brought by others similarly situated to *Panzella,* including but not limited to *Dudek v. Nassau County* 2:12-cv-01193, *Schojan v. Nassau County*, 2:16-cv-4790, *Heredia v. Nassau County* 2:16-cv-04, *Hartenstein v. Nassau County*, 2:16-cv-06139, *Stahura v. Nassau County*, 2:17-cv-04677. The County claimed that it "needed time" to enact a return policy a return policy followed by the rest of New York State, even after repeated threats of contempt of court.

110.   In *Tretola v. County of Nassau*, 14 F.Supp.3d 58 (E.D.N.Y. 2014), the plaintiff gun store owner successfully sued the County for malicious prosecution.

111.   In *Sanseviro v. Rice,* 158 F.Supp.3d 131 (E.D.N.Y. 2016), *aff'd*, 2017 WL 1241934 (2d Cir. 2017), Sanseviro, a retired police officer, filed a civil rights action over his arrest for selling rifles over the counter at a federally licensed gun dealer. The police modified

the condition of the rifle after sale with tools to create illegal features, and then went back to arrest Sanseviro, along with others.

112.     The County and the County District Attorney Kathleen Rice bragged in its press release and press conference that "DA Rice Busts Five Nassau Gun Shops for Selling Illegal Assault Weapons".  In fact, all arrests were either adjourned in contemplation of dismissal or dismissed outright by the Grand Jury.

113.     Defendants have mistreated for decades Nassau County residents in the Family Court system.  Defendants are or should have been aware that its decades' old policy of ignoring a Family Court order of dismissal as triggering the County's obligation to return promptly firearms, along with the County's insistence that residents sue the Sheriff to obtain their own non contraband property back, was unconstitutional.  *See Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002); *County of Nassau v. Canavan*, 1 N.Y.3d 134 (2003); *Razzano v. County of Nassau*, 765 F.Supp.2d 176, 178 (E.D.N.Y. 2011); *Dudek v. Nassau County Sheriff's Dep't*, 991 F. Supp.2d 402, 405 (E.D.N.Y. 2013).

114.     Indeed, in 2017 in the *Panzella* case, the County claimed in its brief before the U.S. Court of Appeals, Second Circuit, that numerous trial and appellate courts have never directed the Nassau County Sheriff's Office to return an individual's longarms after a Family Court temporary order of protection was vacated.  That representation was demonstrably false.

115.     The County has been directed numerous times by State Supreme Court Justices and Federal Court Judges over the years to return individuals' firearms property after a Family Court temporary order of protection had been vacated.[2]

---

[2] *See, e.g.*, *Alexander Horlein v. Nassau County Sheriff*, Index No. 11935/2003 (Sup. Ct. Nassau) ("it is hereby ordered that the Nassau County Sheriff is to release all firearms owned by petitioner forthwith"); *Christopher Bahntge v. Nassau County Sheriff's Department*, Index No. 5642/2007 (Sup. Ct. Nassau) ("this Court … grants the petitioner's application pursuant to CPLR article 78 for an order directing the

20

116.     The Defendant County, through its Police Department, Defendant former Acting Commissioner Krumpter, Defendant Commissioner Ryder, and John Does #1-3 and Jane Does #1-3, as employees of the Police Department's Pistol License Section, knowingly and deliberately created, continued, implemented, preserved or maintained a series of unconstitutional policies, including the Policy in this matter, which either already have been declared unconstitutional or clearly are unconstitutional, as in the present case.

117.     The continued violation of Plaintiff Henry's rights to possess the shotgun he purchased represents a continuing willful and intentional violation of a fundamental right protected by both the Federal and State Constitutions under the Second Amendment.

### The County Fails to Provide a Prompt
### Review of the Revocation of Plaintiff's Pistol License

118.     On May 5, 2015, Plaintiff Henry wrote the Pistol License Section of the Defendant Police Department and requested reinstatement of his firearm privileges.

119.     Similarly, on October 17, 2016, Plaintiff Henry wrote the Pistol License Section of the Defendant Police Department yet again, and requested an appeal of his pistol license revocation.

120.     The decision to uphold the revocation was issued on January 24, 2018.

121.     Thus, according to the County and Police Department, Plaintiff is ineligible to apply for a pistol license for five more years, or until January 24, 2023.

---

release of 26 firearms previously seized by the respondent, Nassau County Sheriff's Department"); *Mathie v. Nassau County Sheriff's Department*, Index No. 18482/2007 (Sup. Ct. Nassau) ("the petition is granted and therefore, the respondent, the Nassau County Sheriff's Department, is directed to return to the petitioner … his firearms"); *Mark Solomon v. Thomas Suozzi, et al.*, Index No. 010253/2003 (Sup. Ct. Nassau) ("since it has been adequately established that the Family Court Order of Protection has been vacated, the burden of proving entitlement to retain the surrendered property rests upon respondent").

122.    Thus, according to the County and Police, Plaintiff is also ineligible own or possess any firearm during this period of time or thereafter, if not issued a new pistol license.

123.    Upon information and belief, *Razzano* binds the Defendant County and its subdivisions and agencies such as Defendant Police Department and the individual Defendants to create a system to "promptly" return confiscated firearms to citizens capable of owning, possessing or buying a firearm, such as Plaintiff Henry.  *See Panzella v. Sposato,* 863 F.3d 210, 219 (2d Cir. 2017) (*citing Razzano*); *Razzano v. County of Nassau*, 765 F. Supp. 2d 176, 191 (E.D.N.Y. 2011) (promptly reviewing firearms matters is a protected individual right).

124.    More specifically, the creation, continuance, implementation, preservation or maintenance of the Policy affects a fundamental Constitutional right, which has been deliberately violated by Defendants again and again.

125.    Plaintiff Henry is under no restriction that would prevent him from purchasing a new longarm under Federal Law, or in New York City or Suffolk County, or anywhere else.

126.    The unconstitutional policy implemented by the Defendants has caused the Plaintiff to suffer a deprivation of his Second Amendment rights, and an unacceptable delay in review and determination of his pistol license appeal and an unconstitutional debarment period.

127.    Upon information and belief, unless the Policy is changed, Plaintiff will suffer the loss, destruction or permanent surrender of his personal property.

### The County's Present Pistol License Program And Its Disparate Impact On the Minority Community

128.    The issuance of a Pistol License in New York State is governed by Penal Law Penal Law §400.00 *et seq*.

129.     Under New York State Penal Law §400.00(1) "No license shall be issued except for an applicant …(b) of good moral character… and (n) concerning whom no good cause exists for the denial of the license."

130.     In New York State, Penal Law §400.00 describes two primary types of licenses for a handgun, a carry license which allows an individual to carry a concealed handgun in public and a premises license which allows an individual to have a pistol license in the home.  (See *Toussaint v. City of New York*, 2018 WL 4288637 at 3 (E.D.N.Y., 2018.)

131.     New York State Penal Law §400.00(2), Types of Licenses, provides:

> 2. Types of licenses. …A license for a pistol or revolver, …, shall be issued to (a) have and possess in his dwelling by a householder; (b) have and possess in his place of business by a merchant or storekeeper; (c) have and carry concealed while so employed by a messenger employed by a banking institution or express company; (d) have and carry concealed by a justice of the supreme court in the first or second judicial departments, or by a judge of the New York city civil court or the New York city criminal court; (e) have and carry concealed while so employed by a regular employee of an institution of the state, or of any county, city, town or village, under control of a commissioner of correction of the city or any warden, superintendent or head keeper of any state prison, penitentiary, workhouse, county jail or other institution for the detention of persons convicted or accused of crime or held as witnesses in criminal cases, provided that application is made therefor by such commissioner, warden, superintendent or head keeper; (f) have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof; …

132.     The current Police Department pistol license application instructions and application form is annexed hereto as Exhibit 7.  The County pistol license provides for the following categories under Section A:

> Target/Hunting
>
> Business/Target/Hunting
>
> Armored Car Guard

Armed Guard

Retired Fed LEO

Retired Peace Officer

Retired Police Officer

Other: _____

133.    Upon information and belief, "other" refers to unrestricted carry licenses under 400.00(2)(f) "to have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof; …".but where no local limitation is applied such as "target or hunting"

134.    In comparison, the New York City Police Department offers the following categories (*see* Exhibit 8):

Carry Business

Carry Guard/Security

Retired Police Officer

Limited Carry

Gun Custodian

**Premises (Residence)**

**Premises (Business)**

Special Carry

135.    New York City offers a license for a handgun in the home, under Penal Law §400.00(2)(a) and in conformance with the U.S. Supreme Court's ruling in *District of Columbia v. Heller*, 544 U.S. 570 (2008) and the core Second Amendment rights.

136.    In comparison to Nassau County, Suffolk County offers the following categories on its pistol license application (*see* Exhibit 9):

**Sportsman (Premise/Dwelling)**

**Sportsman (Target and Hunting)**

Business

Security

Employment

Auxiliary Police

Retired Law Enforcement

Self Protection

137.    In comparison, the New York State Police, which preside over all counties besides New York City, Westchester, Suffolk and Nassau regarding issuance, suspension, reinstatement and renewal of pistol licenses throughout New York State, offer the following licenses (*see* Exhibit 10):

Carry Concealed

**Possess on Premises**

Possess/Carry During Employment

138.    Penal Law §400.00(6) states:

Any license issued pursuant to this section shall be valid **notwithstanding the provisions of any local law or ordinance**.… A license to carry or possess a pistol or revolver, not otherwise limited as to place or time of possession, shall be effective throughout the state, except that the same shall not be valid within the city of New York unless a special permit granting validity is issued by the police commissioner of that city.

139.     Upon information and belief, a pistol license granted in Nassau County is a concealed carry license throughout New York State (except New York City) under Penal Law §400.00(2)(f).

140.     Upon information and belief, a pistol license issued by Nassau County improperly ignores Penal Law §400.00(2)(a) which provides a citizen with the right to a firearm to "have and possess in his dwelling by a householder."  Under *Heller*, this is a core right protected by the Second Amendment.

141.     Penal Law §400.00(7) states in relevant part:

> Any license issued pursuant to this section shall, except in the city of New York, be approved as to form by the superintendent of state police.

142.     Upon information and belief, the form of license offered by the County of has not been approved by the superintendent of state police.

143.     Penal Law §400.00(10)(b) states in relevant part:

> **All licenses shall be recertified to the division of state police every five years thereafter.** …Failure to recertify shall act as a revocation of such license.  If the New York state police discover as a result of the recertification process that a licensee failed to provide a change of address, the New York state police shall not require the licensing officer to revoke such license.

144.     According to New York State Police Procedure, the renewal process shall be accomplished online at https://firearms.troopers.ny.gov/pprecert/welcome.faces.

145.     Under Penal Law §400.00, the Police Department has no authority to oversee renewals of pistol licenses.  In fact, the Police Department misuses the pistol license renewal process to revoke or downgrade licenses, harass current licensees and deter minority pistol license applicants.

146.    A map of the geographic distribution of the 27,333 pistol licenses in the County in 2018 is shown in Exhibit 12 hereto, which is an article from the *Long Island Herald*.  (*See* Exhibit 12, pg. 3).

147.    The racial and ethnic geographic distribution of the County is shown in a similar map in Exhibit 13 from the website www.statisticalatlas.com.  (*See* Exhibit 13, pages 3-4).

148.    Comparisons of the geographic concentration of pistol licensees in the County with the racial and ethnic geographic distribution of the population in the County is show in Exhibit 11.  The first page of Exhibit 11 (Figures 1 and 2A) compares the geographic concentration of pistol licensees with the White population in Nassau County.  The comparison shows a high level of pistol licensees in the County's White communities.  The second page of Exhibit 11 (Figures 1 and 2B) compares the geographic concentration of pistol licensees with the Hispanic population in Nassau County.  The comparison shows a low level of pistol licensees in the County's predominantly Hispanic communities.  Finally, the third page of Exhibit 11 Figures 1 and 2C) compares the geographic concentration of pistol licensees with the Black population. The comparison shows a low level of pistol licensees in the County's Black communities.

149.    The average community holders of pistol licenses in Nassau County is 20 per 1000.  However in Uniondale, Hempstead and Roslyn Heights, pistol licenses holders are only between 0-5 per 1000.

150.    Uniondale, Hempstead and Roslyn Heights are primarily non-white communities. (*See* Exhibit 13).

151.    In this action, the County has produced records of pistol license revocations from November 15, 2016 to date.  There has not been a single revocation of a pistol license marked "Hispanic".

152.   Between November 15, 2016 to the date of production, there were 64 Nassau County pistol license revocations disclosed thus far.  They are categorized racially as:

Black: 6

Asian Pacific Islander: 2

Hispanic: 0

White:  56

153.    Upon information and belief, the race and ethnicity of pistol license revocations are not consistent with the racial and ethnic population of Nassau County.

154.   Upon information and belief, the pistol license revocations correlate to the pistol license map shown in Exhibit 12, as created by the County and The Police Department policy to deter gun ownership generally, and in particular with disregard to the effect on the minority community.

## The County's Policy to Deter Firearms Ownership

155.   The County and the Police Department have an unconstitutional policy (the "Policy") to:

(a)   Ignore Penal Law§400.00(2)(a) entirely;

(b)   Issue all pistol licenses using the concealed carry standards under Penal Law § 400.00(2)(f);

(c)   Conduct unauthorized and extra-judicial confiscation of firearms when serving Family Court Temporary Orders of Protection;

(d)   Oversee and supervise renewals of pistol licenses without authority under the law;

(e)   Not provide a prompt administrative review of pistol license revocation decisions;

(f)   Apply an arbitrary five year debarment period for a new license once revoked;

28

(g)     Apply the pistol license "proper cause" standards to longarms using an unconstitutional and unauthorized application of Penal Law §400.00(11);

(h)     Fail to enact a *Krimstock*-style hearing for the prompt return of longarms once confiscated by the County;

(i)     Reduce the number of pistol licenses, including Penal Law §400.00(2)(f) concealed carry firearms in Nassau County; and

(j)     Disregard the discriminatory effect of the impact of the Policy in the non-white community,

all of which has had a chilling effect on those who may wish to possess a handgun in the home and on those who may wish to own a rifle or shotgun (a longarm) and simultaneously hold a pistol license in Nassau County.

### FIRST CLAIM
### (42 U.S.C. § 1983 – Violation of Plaintiff's Second Amendment Right to Bear Arms Against All Defendants)

156.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 155 above as if fully set forth herein.

157.    As set forth below, Defendants are infringing Plaintiff Henry's Second Amendment rights, and other rights afforded constitutional protection under the Federal and State Constitutions.

158.    Ownership of firearms by individuals legally entitled to own or possess those firearms is a basic fundamental right protected by the Second Amendment of the United States Constitution.

159.    Plaintiff is legally entitled to own and possess longarms, including his recently purchased shotgun.

160.    However, Defendants are denying Plaintiff his right to possess any firearms, including his recently purchased shotgun, to at least 2023, if not later.

161.     As a result, Defendants are interfering with and infringing upon Plaintiff Henry's ability to exercise his Second Amendment rights.

162.     By reason of the foregoing, Plaintiff seeks a declaratory judgment, temporary, preliminary and permanent injunctive relief and monetary damages for violation of his Second Amendment rights.

### SECOND CLAIM
### (42 U.S.C. § 1983 – *Monell Claim* Against All Defendants)

163.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 162 above as if fully set forth herein.

164.     The County has created, implemented, continued, maintained and enforced the Policy, under which owners of pistols are in jeopardy of losing their right to own or possess all types of firearms as a result of the revocation of a pistol license.

165.     This Policy is implemented by the County through its administrative agencies such as the Police Department, former Acting Commissioner Thomas Krumpter, Current Acting Commissioner Patrick Ryder, and John Does #1-3 and Jane Does #1-3, as employees of the Pistol License Section of the Defendant Police Department.

166.     The existence of the Policy set forth herein was denied in open court during the 2014 *Razzano* case by the Nassau County Attorney's Office in order to avoid a preliminary injunction related to the registry under the SAFE Act but continues to date in multiple cases, each costing the County of Nassau significant sums of money in legal fees.

167.     Even so, Defendant County and its administrative arm, Defendant Police Department, implemented an unconstitutional Policy to deter gun ownership.

168.    The implementation and continued existence of this Policy has caused severe

emotional distress and financial injuries to Plaintiff Henry, and placed all others similarly

situated in jeopardy.

169.    The implementation and continued existence of this Policy has deprived Plaintiff

Henry of his constitutional rights.

170.    The implementation and continued existence of this Policy has caused Plaintiff

Henry at a significant monetary cost to retain private legal counsel to fight for his

constitutionally protected rights.

171.    By reason of the foregoing, Plaintiff seeks a declaratory judgment, temporary,

preliminary and permanent injunctive relief and monetary damages for violations under *Monell*.

**THIRD CLAIM**
**(42 U.S.C. § 1983 – Punitive Damages**
**Against the County and Police Department)**

172.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 171

above as if fully set forth herein.

173.    Upon information and belief, Defendants' Policy demonstrates callous

indifference to the Second Amendment Rights of its citizens, especially in the non-white

community.

174.    For example, the Defendants demonstrated callous indifference to the directive to

implement a return policy after the *Razzano* decision in 2011, a *Krimstock* hearing and other

Court directives.

175.     Further, the Defendants demonstrated callous indifference to the rights of those

affected by the *Panzella* decision in 2017.  The Defendants again failed to implement a return

policy consistent with the statutory return policy followed throughout New York State to promptly return non-contraband longarms to their rightful owners.

176.    Upon information and belief, Defendants conducted themselves with reckless or callous indifference to the federally protected rights of the Plaintiff and others.

177.    Upon information and belief, Defendants conducted themselves with the purpose, intent or effect of depressing the number of pistol licenses and longarms in the County of Nassau.

178.    By reason of the foregoing, Henry is entitled to recover punitive damages against the County and the Police Department.

**FOURTH CLAIM**
**(42 U.S.C. §§ 2000e. et seq. – Title VII Violation Against All Defendants)**

179.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 178 above as if fully set forth herein.

180.    The actions of the Defendants as set forth above constitute a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e. et seq.

**FIFTH CLAIM**
**(42 U.S.C. § 1981 – Against All Defendants)**

181.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 180 above as if fully set forth herein.

182.    The actions of the Defendants as set forth above constitute a violation of 42 U.S.C. § 1981.

**SIXTH CLAIM**
**(42 U.S.C. § 1988(b) – Legal Fees Against All Defendants)**

183.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 182 above as if fully set forth herein.

184.    As a direct result of the Defendants' continued retention of Plaintiff Henry's firearms without proper cause or legal authority to do so, Plaintiff has incurred significant legal fees in order to regain possession of his property.

185.    By reason of the foregoing, Plaintiff Henry seeks damages from all Defendants pursuant to 42 U.S.C. § 1988(b), in an amount this Court deems just and proper.

## JURY TRIAL DEMANDED

186.    Plaintiff hereby demands a trial by jury of all issues raised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

A.    First Claim: Awarding Plaintiff in excess of $5,000,000.00 in damages; declaratory judgment, temporary, preliminary and permanent injunctive relief and monetary damages for violation of his Second Amendment rights;

B.    Second Claim: Awarding Plaintiff in excess of $5,000,000.00 in damages; declaratory judgment, temporary, preliminary and permanent injunctive relief and monetary damages for violations under *Monell*;

C.    Third Claim: Awarding Plaintiff punitive damages in excess of $5,000,000.00, or in an amount this Court deems just and proper;

D.    Fourth Claim: Awarding Plaintiff in excess of $5,000,000.00 in damages; declaratory judgment, temporary, preliminary and permanent injunctive relief and monetary damages according to 42 U.S.C. §§ 2000e. *et seq*., Title VII Violation against all Defendants;

E.    Fifth Claim: Awarding Plaintiff in excess of $5,000,000.00 in damages; declaratory judgment, temporary, preliminary and permanent injunctive relief and monetary damages according to 42 U.S.C. § 1981, against all Defendants;

  F.  Sixth Claim: Awarding Plaintiff attorneys' fees, costs and disbursements of bringing this action pursuant to 42 U.S.C. § 1988(b) in an amount this Court deems just and proper;

  G.  A declaratory judgment that Defendants willfully violated Plaintiff's rights secured by the Federal and State Constitutions, including but not limited to the Second Amendment as alleged herein;

  H.  An Order requiring Defendant Nassau County and Defendant Police Department (i) to cease enforcing the Policy, which is tantamount to a complete bar to firearms ownership for those pistol licensees who have their pistol license revoked; (ii) to notify and compensate all those Nassau County residents affected by the unconstitutional Policy since its inception; (iii) to institute a fair, adequate and lawful procedure for the issuance, revocation, reinstatement of pistol licenses; and (iv) to recognize the category of Penal Law § 400.00(2)(a) home/premises pistol licenses and enact such other modifications to ensure that Defendant Nassau County ceases its unconstitutional Policy;

  I.  That the Court appoint a Special Monitor to oversee compliance with the Court's Order(s), pursuant to Fed. Rule of Civ. P. 53, including implementing educational requirements and training of Police and County Officials; and

J.       For such further legal and/or equitable relief as this Court deems just and proper.

Dated:   Garden City, New York
         March 21, 2019

La REDDOLA, LESTER
 & ASSOCIATES, LLP


By: /s/ Robert J. La Reddola
    Robert J. La Reddola
    Steven M. Lester
    *Attorneys for Plaintiff*
    600 Old Country Road – Suite 230
    Garden City, New York 11530
    (516) 745-1951