UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LAMBERT HENRY,

                                           **MEMORANDUM & ORDER**

                 Plaintiff,             17-CV-06545 (DRH)(AKT)

      -against-

COUNTY OF NASSAU and NASSAU COUNTY
POLICE DEPARTMENT, former Acting Commissioner
THOMAS KRUMPTER, Commissioner PATRICK
RYDER, Lieutenant MARC TIMPANO, Sergeant ADAM
FISCHER, Deputy Sheriff STEPHEN TRIANO, Deputy
Sherriff JEFFERY KUCHEK, Deputy Sheriff MARK
SIMON and Deputy Sheriff JEFFREY TOSCANO,

                 Defendants.
-----------------------------------------------------------------X

**APPEARANCES:**

**For Plaintiff:**

La Reddola, Lester & Associates, LLP
600 Old Century Road, Suite 230
Garden City, New York 11530
By:    Robert J. La Reddola, Esq.
       Steven M. Lester, Esq.

**For Defendant:**

Nassau County Attorney
1 West Street
Mineola, New York 11501
By:    Ralph J. Reissman, Esq.

**HURLEY, Senior District Judge:**

      Plaintiff Lambert Henry ("Plaintiff" or "Henry") brought this action against Defendants

County of Nassau ("County"), Nassau County Police Department ("Police Department"), former

Acting Commissioner Thomas Krumpter, Commissioner Patrick Ryder, Lieutenant Marc

Timpano, Sergeant Adam Fischer, Deputy Sheriff Stephen Triano, Deputy Sheriff Jeffery

Kuchek, Deputy Sheriff Mark Simon, and Deputy Sheriff Jeffrey Toscano (collectively, "Defendants"). Plaintiff seeks a declaratory judgment, monetary damages, and injunctive relief related to Defendants' alleged violation of Plaintiff's Second Amendment rights under 42 U.S.C. § 1983, including *Monell* liability, and alleged violation of 42 U.S.C. § 1981[1] "based upon Defendants' policy or practice to deter ownership of all firearms and with the intention and effect of reducing pistol license ownership, most especially in the non-white communities of Nassau County." Plaintiff seeks punitive damages under 42 U.S.C. § 1983 and legal fees under 42 U.S.C. § 1988(b). Presently before the Court is Defendants' motion to dismiss the Third Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the motion is granted.

## BACKGROUND

The following allegations are taken from the Third Amended Complaint ("TAC"), including the documents attached thereto,[2] and assumed true for purposes of this motion, unless otherwise noted.

### I.     Confiscation of Plaintiff's Handguns

Plaintiff is an African American retired New York City Corrections Officer. (TAC ¶¶ 32, 88.) On October 20, 2014, Plaintiff's daughter, Brittany Janesse Henry, commenced an action against him in the Nassau County Family Court following an argument with him about her school grades. (TAC ¶¶ 22-23.) That same day, the Honorable Frank D. Dikranis of the Nassau County Family Court issued an *ex parte* temporary order of protection against Plaintiff to remain in full force and effect until and including April 19, 2015 ("Order of Protection"). (TAC ¶¶ 24,

---

[1] Plaintiff also brought a claim for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq, but withdrew that claim on May 23, 2019. (ECF No. 59.)

[2] The Court may consider documents attached to the TAC for purposes of this motion to dismiss. *See Chambers v. Time Warner. Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

26.) Though the Order of Protection contained form language ordering Plaintiff to refrain from certain activities, such as assaulting or harassing his daughter, it did not contain the form provision requiring Plaintiff to surrender his handguns, pistols, shotguns, and other firearms.[3] (TAC ¶¶ 25, 27.)

Three days later, on October 23, 2014, between 9:30 and 10:00 p.m., "approximately four Nassau County Deputy Sheriffs[4] served Henry with the Order of Protection at his home." (TAC ¶ 28.) Plaintiff alleges that the Deputy Sheriffs "did not have a search warrant to enter and search Henry's home" and "did not have authority to demand the production of any firearms or firearms license." (TAC ¶¶ 29, 30.) Plaintiff alleges upon information and belief that that "the Deputy Sheriffs were authorized only to serve the Order and related Family Court papers on Henry and they were to depart," and that they had "no other legal authority" in Plaintiff's home. (TAC ¶¶ 33, 34.) After the Deputy Sheriffs identified themselves as agents of the Nassau County Sheriff's Department, Plaintiff "opened the front door to his residence." (TAC ¶ 37.) "As soon as Henry opened the door, all of the Deputy Sheriffs entered Henry's home." (TAC ¶ 38.) Henry did not consent to the "intrusion by the Deputy Sheriffs into his home." (TAC ¶ 39.)

"The Deputy Sheriffs told Henry that he was being served with a Summons to appear in Family Court for a Temporary Order of Protection hearing and that he was to appear in Family Court on the return date indicated on the Summons." (TAC ¶ 40.) Henry then identified himself to the Deputy Sheriffs as a retired New York City Corrections Officer. (TAC ¶ 41.) "[T]he Deputy Sheriffs demanded that Plaintiff Henry produce for the Deputy Sheriffs all of his

---

[3] That form provision, which is sometimes included in orders of protection but was not included in the Order of Protection against Plaintiff, states in relevant part: "Surrender any and all handguns, pistols, revolvers, rifles, shotguns and other firearms owned or possessed, including, but not limited to, the following: any and all firearms and do not obtain any further guns or other firearms." (TAC ¶ 27.)

[4] Plaintiff uses the term "Deputy Sheriffs" to refer to Defendants Fischer, Tirano, Kuchek, Simon and Toscano. (TAC ¶ 20.)

firearms for removal from Henry's residence." (TAC ¶ 43.) Henry complied with the request. (TAC ¶ 44.) "When the Deputy Sheriffs inquired as to whether Henry had any other weapons in his home, such as rifles or shotguns, he responded accurately that he did not possess or own any other firearms." (TAC ¶ 46.)

The Order of Protection was dismissed on the return date, March 12, 2015. (TAC ¶ 47.) "Henry's handguns were not returned to him at that time." (TAC ¶ 48.)

## II.    *Nassau County Police Department's Alleged Misconduct Regarding Handguns*

"Henry possessed a Penal Law §400.00(2)(f)[5] concealed carry license granted by the [County] and the Police Department." (TAC ¶ 49.) "On or about October 12, 2016, Henry received a Notice of Pistol License Revocation (the Revocation Notice) from the Police Department's Pistol License Section." (TAC ¶ 50; TAC Ex. 3 [ECF No. 45-3].) The Revocation Notice explains that the factors contributing to the revocation of Plaintiff's pistol license included "Violations of Pistol License Handbook [Chapter 1, Section I(1) and Section I(2)," "History of Domestic Violence Incidents," and "History of Multiple Orders of Protection." (TAC Ex. 3 [ECF No. 45-3] at 1.) Plaintiff alleges "[u]pon information and belief, the impetus of the revocation resulted from the service of the [Order of Protection]." (TAC ¶ 54.)

On or around November 16, 2016, Plaintiff appealed his pistol revocation to the Police Department. (TAC ¶ 51.) The Police Department upheld the revocation decision in a January 24, 2018, fourteen-page Decision on Appeal ("Revocation Appeal"). (TAC ¶ 52; TAC Ex. 6 [ECF No. 45-6].) The Revocation Appeal quotes relevant portions of the Pistol License Section Handbook, which states "[t]he policy of the Nassau County Police Department is to *immediately*

---

[5] NYPL §400.00(2)(f) provides "A license for a pistol or revolver, other than an assault weapon or a disguised gun, shall be issued to…have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof."

*suspend* the pistol license of any licensee who violates the terms and conditions of the license or this Handbook and commence an investigation to determine whether or not the license should be revoked." (TAC Ex. 6 at 7) (emphasis in Revocation Appeal). Violations of the terms and conditions of the pistol license include "being named as a respondent in a proceeding for the issuance of an Order of Protection or Temporary Order of Protection," and a "[r]eport of any domestic situation involving a licensee where violence is threatened or alleged to have occurred or the existence of a volatile domestic situation." (TAC Ex. 6. at 7.)

The Revocation Appeal explains that "satisfactory evidence exists demonstrating that the Pistol License Section properly revoked Appellant's pistol license based upon a showing of 'good cause' in accordance with New York State Penal Law ('NYPSL') § 400.00. Specifically, the volatile domestic history between Appellant and his wife, the volatile familial environment at Appellant's residence, Appellant's history as a Respondent in Temporary Orders of Protection, and his multiple violations of the Pistol License Section Handbook notice requirements substantiate the Pistol License Section's determination." (TAC Ex. 6 at 1.) The Revocation Appeal goes on to describe the fourteen "incidents where law enforcement officers reported to Appellant's residence to assist with domestic incidents" between 2001 and 2016. (TAC Ex. 6 at 3-4.)

III.    *Plaintiff's Current Situation*

On July 19, 2017, Plaintiff passed a National Instant Check System background check and "was able to purchase a pump action shotgun (a type of unlicensed long arm)." (TAC ¶¶ 89-90.) Plaintiff is concerned that he cannot take possession of the shotgun due to the language in his revocation notice and the County's "policy that the revocation of a County pistol license also results in a loss of all firearms rights." (TAC ¶¶ 91-94.)

*IV.    Nassau County's License Options*

Plaintiff contends that "Nassau County residents who may not qualify for the Penal Law §400.00(2)(f) pistol license 'to have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof' are excluded from consideration for the Penal Law §400.00(2)(a) to 'have and possess in his dwelling by a householder' pistol license because the County and the Police Department do not allow such a license." (TAC ¶ 98.) The County's pistol license application provides for the following categories of pistol licenses: Target/Hunting; Business/Target/Hunting; Armored Car Guard; Armed Guard; Retired Fed LEO; Retired Peace Officer; Retired Police Officer; Other. (TAC ¶ 132.) Plaintiff alleges upon information and belief that "Other" refers to an unrestricted carry license under New York Penal Law ("NYPL") § 400.00(2)(f). (TAC ¶ 133.)

*V.    Alleged Disparate Impact on Minorities*

Plaintiff alleges that the County's pistol license program has a disparate impact on minorities. Plaintiff attaches to the complaint maps showing the racial and ethnic geographic distribution of the County, as well as the distribution of pistol licenses. (TAC ¶¶ 146-148; TAC Exs. 11-13.) A comparison of the geographic concentration of pistol licensees with certain racial populations in Nassau County "shows a high level of pistol licensees in the County's White communities" and "a low level of pistol licensees in the County's predominantly Hispanic" and Black communities. (TAC ¶ 148.) On average, pistol license holders make up 20 of every 1000 people in Nassau County, whereas in certain non-white communities, the rate is 0-5 per 1000. (TAC ¶¶ 149-50.) Additionally, of the 64 pistol license revocations that the County disclosed between November 15, 2016 to the "date of production," 56 were for people categorized as

"White," six for people categorized as "Black," two for people categorized as "Asian Pacific Islander," and zero for people categorized as "Hispanic." (TAC ¶ 152.)

## DISCUSSION

### I.     Rule 12(b)(6) Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action, a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts

that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between

possibility and plausibility of 'entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at

556-57) (internal citations omitted); *see In re Elevator Antitrust Litig*., 502 F.3d 47, 50 (2d Cir.

2007). Determining whether a complaint plausibly states a claim for relief is "a context specific

task that requires the reviewing court to draw on its judicial experience and common sense."

*Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

## II. Claims Against Nassau County Police Department

As an administrative arm of Nassau County, the Nassau County Police Department is not

a suable entity. *Panzella v. Cty. of Nassau*, 2015 WL 5607750, at *5 (E.D.N.Y. Aug. 26, 2015),

*aff'd in part, appeal dismissed in part sub nom. Panzella v. Sposato*, 863 F.3d 210 (2d Cir. 2017)*,

as amended* (July 18, 2017). Plaintiff's counsel should be aware of what the law says in this

regard given other cases in this district where he has been advised as such. *See, e.g., Panzella*,

2015 WL 5607750, at *5; *Dudek v. Nassau Cty. Sheriff's Dept.*, 991 F. Supp. 2d 402, 410

(E.D.N.Y. 2013). Accordingly, Plaintiff's claims against the Nassau County Police Department

are dismissed with prejudice.

## III. Section 1983 Claim for Second Amendment Violation

### a. The Parties' Arguments

Defendants argue that Plaintiff has failed to state a claim under the Second Amendment

because he has no specific constitutional right to a pistol license, and that NYPL § 400.00(11)

"mandates" that Plaintiff is barred from owning firearms of any kind, including longarms.

(Defs.' Mem. in Supp. [ECF No. 68] at 5, 9.) Defendants also argue that NYPL § 400.00(11)

allows a licensing officer to revoke or cancel a handgun license "at any time." (Defs.' Mem. in

Supp. at 6.) Plaintiff argues that this case is not about ownership of a particular firearm but rather

the County's ban of all firearms, and that the language of NYPL § 400.00(11) does not allow a

licensing officer to revoke a license "at any time" but rather in the specific situations enumerated

in that section. (Pl.'s Mem. in Opp. at 10, 11.)

> ### b. *Applicable Legal Standards*

Section 1983 provides in pertinent part:

> Every person who, under color of . . . [state law] subjects, or causes to be
> subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law [or a] suit in equity….

42 U.S.C. § 1983. "In other words, a § 1983 claim has two essential elements: (1) the defendant

acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered

a deprivation of her rights or privileges secured by the Constitution or federal laws." *Lynch v.

Southampton Animal Shelter Found., Inc.*, 971 F. Supp. 2d 340, 348 (E.D.N.Y. 2013) (quoting

*Annis v. Cty of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998)).

The Second Amendment provides: "A well regulated Militia, being necessary to the

security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

U.S. Const., amend. II. Two recent Supreme Court cases, *District of Columbia v. Heller* and

*McDonald v. City of Chicago*, explored the reach of the Second Amendment. In *Heller*, the

Court held that the Second Amendment protects an individual right to possess a firearm

unconnected with service in a militia, and to use that arm for traditionally lawful purposes, such

as self-defense within the home. *D.C. v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d

637 (2008). *McDonald* established that the Second Amendment's protections apply to the states

through the Fourteenth Amendment's Due Process Clause. *McDonald v. City of Chicago, Ill.*,

561 U.S. 742, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010).

The "right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. The Court in both *Heller* and *McDonald* recognized limits to the Second Amendment for certain categories of people, such as felons and the mentally ill, and the need for "laws imposing conditions and qualifications on the commercial sale of arms." *Heller* 554 U.S. at 626-27; *accord McDonald*, 561 U.S. at 786.

### c. The Challenged Firearm Restrictions

Plaintiff alleges that the County has an unconstitutional policy to:

(a) Ignore Penal Law[]§[]400.00(2)(a) entirely;

(b) Issue all pistol licenses using the concealed carry standards under Penal Law § 400.00(2)(f);

(c) Conduct unauthorized and extra-judicial confiscation of firearms when serving Family Court Temporary Orders of Protection;

(d) Oversee and supervise renewals of pistol licenses without authority under the law;

(e) Not provide a prompt administrative review of pistol license revocation decisions;

(f) Apply an arbitrary five year debarment period for a new license once revoked;

(g) Apply the pistol license 'proper cause' standards to longarms using an unconstitutional unauthorized application of Penal Law §[]400.00(11);

(h) Fail to enact a *Krimstock*-style hearing for the prompt return of longarms once confiscated by the County;

(i) Reduce the number of pistol licenses, including Penal Law §[]400.00(2)(f) concealed carry firearms in Nassau County; and

(j) Disregard the discriminatory effect of the impact of the Policy in the non-white community.

(TAC ¶ 155.)

### d. Legal Framework for Firearm Licensing in New York

In order to address Plaintiff's arguments, many of which are predicated on misstatements of the legal framework surrounding gun ownership in New York state and Nassau County, the

Court finds it useful to provide a brief overview of NYPL Section 400.00. Section 400.00 "is the exclusive statutory mechanism for the licensing of firearms in New York State." *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 85-86 (2d Cir. 2012) (internal quotations and citations omitted). "There are two primary types of handgun licenses in New York: a 'carry' license, which allows an individual to carry a concealed handgun in public, and a 'premises' license, which allows an individual to have a pistol or revolver in her home." *Toussaint v. City of New York*, 2018 WL 4288637, *4 (E.D.N.Y. Sept. 7, 2018) (internal citations omitted). "A carry license allows an individual to 'have and carry [a] concealed' handgun 'without regard to employment or place of possession … when proper cause exists' for the license to be issued." *New York State Rifle & Pistol Ass'n, Inc. v. City of New York ("NYSRP v. City")*, 883 F.3d 45, 52-53 (2d Cir. 2018), *cert. granted sub nom. New York State Rifle & Pistol Ass'n, Inc. v. City of New York,* 139 S. Ct. 939, 203 L. Ed. 2d 130 (2019) (citing § 400.00(2)(f)).

Eligibility for a firearm license is governed by NYPL § 400.00(1), which requires, among other criteria, that an applicant be someone "of good moral character" and "who has not had a license revoked or who is not under a suspension or ineligibility order issued pursuant to the provisions of section 530.14 of the criminal procedure law or section eight hundred forty-two-a of the family court act." [6] NYPL § 400.00(1).

Applications for a firearm license are made to the licensing officer in the county where the applicant resides. NYPL § 400.00(3)(a). The licensing officer in Nassau County, where Plaintiff resides, is the Nassau County Police Commissioner. NYPL § 265.00(10). Licensing

---

[6] Both N.Y. Crim. Proc. Law § 530.14 and N.Y. Fam. Ct. Act § 842-a pertain to "Suspension and revocation of a license to carry, possess, repair or dispose of a firearm or firearms pursuant to Section 400.00 of the penal law and ineligibility for such a license; order to surrender firearms." N.Y. Crim. Proc. Law § 530.14 (McKinney); N.Y. Fam. Ct. Act § 842-a (McKinney).

officers have "broad discretion in determining whether to issue or revoke a license to possess firearms." *Juzumas v. Nassau Cty.*, 2019 WL 4752303, *1 (E.D.N.Y. Sept. 30, 2019).

Licensing certification and renewal is governed by NYPL § 400.00(10). As with decisions to grant a license application, the licensing officer makes determinations on license renewals. NYPL § 400.00(10)(a) ("An application to renew a license that has not previously expired, been revoked or cancelled shall thereby extend the term of the license until disposition of the application by the licensing officer."). Certification is a process in which the licensee provides the licensing officer with certain information, such as current name and date of birth. NYPL § 400.00(10)(a). The licensing officer files such information in the executive department, division of state police, Albany. *See* NYPL § 400.00(10); NYPL § 400.00(9). "All licensees shall be recertified to the division of state police every five years thereafter." NYPL § 400.00(10)(b). The licensing officer also has the authority to revoke and cancel a license. NYPL § 400.00(11)(a).

A "firearm" includes, inter alia, (a) any pistol or revolver; or (b) a shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length. N.Y. Penal Law § 265.00(3). A shotgun is a "weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger." NYPL § 265.00(12). A rifle is a "weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger." NYPL § 265.00(11). Rifles and

shotguns are known as long guns or longarms. *See Dudek v. Nassau Cty. Sheriff's Dep't.*, 991 F. Supp. 2d 402, 407 n.7 (E.D.N.Y. 2013).

Longarms "pose a unique legal issue because, unlike other firearms 'there is no license requirement for the purchase or possession of longarms." *Panzella v. Cty. of Nassau*, 2015 WL 5607750, at *1 (E.D.N.Y. Aug. 26, 2015) (citing *Razzano v. Cty. of Nassau*, 765 F. Supp. 2d 176, 180 (E.D.N.Y. 2011)). Nonetheless, the possession of longarms is regulated in New York. *See Kachalsky*, 701 F.3d at 85 n.3 (citing NYPL § 265.01(3) (prohibiting longarms on school grounds) and NYPL § 265.05 (prohibiting children less than sixteen years old from possessing longarms without a hunting permit)).

"Firearm licensing and longarm regulation converge in Section 400.00's subsection on license revocation and suspension." *Juzumas v. Nassau Cty.*, 2019 WL 4752303, at *2 (E.D.N.Y. Sept. 30, 2019) (citing NYPL § 400.00(11)). Section 400.00(11)(a) provides:

> (a) The conviction of a licensee anywhere of a felony or serious offense or a licensee at any time becoming ineligible to obtain a license under this section shall operate as a revocation of the license. A license may be revoked or suspended as provided for in section 530.14 of the criminal procedure law or section eight hundred forty-two-a of the family court act. Except for a license issued pursuant to section 400.01 of this article, a license may be revoked and cancelled at any time in the city of New York, and in the counties of Nassau and Suffolk, by the licensing officer, and elsewhere than in the city of New York by any judge or justice of a court of record; a license issued pursuant to section 400.01 of this article may be revoked and cancelled at any time by the licensing officer or any judge or justice of a court of record. The official revoking a license shall give written notice thereof without unnecessary delay to the executive department, division of state police, Albany, and shall also notify immediately the duly constituted police authorities of the locality.

NYPL § 400.00(11)(a). Longarms are referenced in the section governing the consequences of license suspension and revocation, NYPL § 400.00(11)(c), which provides:

> (c) In any instance in which a person's license is suspended or revoked under paragraph (a) or (b) of this subdivision, such person shall surrender such license to the appropriate licensing official and any and all firearms, rifles, or shotguns

owned or possessed by such person shall be surrendered to an appropriate law enforcement agency as provided in subparagraph (f) of paragraph one of subdivision a of section 265.20 of this chapter. In the event such license, firearm, shotgun, or rifle is not surrendered, such items shall be removed and declared a nuisance and any police officer or peace officer acting pursuant to his or her special duties is authorized to remove any and all such weapons.

NYPL § 400.00(11)(c).

As an initial matter, some of Plaintiff's arguments can be dismissed on the basis that they are predicated on a misunderstanding of the licensing framework. First, Plaintiff argues that Nassau County does not allow a license for possession of a firearm in the home pursuant to § 400.00(2)(a). Plaintiff points to the categories of pistol licenses available in Nassau County as compared with those of other counties in the State, which offer specific licenses for a handgun in the home. A review of the Nassau County Police Department's Pistol License Section Handbook ("Handbook"), however, reveals that a license granted under the "Target/Hunting" category includes a license for use "within [a licensee's] home for the purpose of home protection."[7] (NASSAU CTY. POLICE DEP'T PISTOL LICENSE SECTION HANDBOOK, (2019) 7, https://www.pdcn.org/DocumentCenter/View/113.) Thus, Plaintiff's allegation that the County "[ignore[s] Penal Law §[]400.00(2)(a) entirely" is factually inaccurate and his claim of a Second Amendment violation on that basis is dismissed. (TAC ¶ 155.)

Second, Plaintiff alleges that "[u]pon information and belief, the County and the Police Department make determinations on renewals of Nassau County Pistol Licenses without legal authority under Penal Law § 400." (TAC ¶ 58.) As the language of NYPL § 400 makes clear, however, the licensing officer, i.e. the Nassau County Police Commissioner, is in fact authorized to make such determinations. To prove its point, Plaintiff cites to a provision on license

---

[7] The Court may properly consider the Handbook because it is a document incorporated by reference in the Third Amended Complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

recertification, which is a different process than license renewal. (TAC ¶ 62.) Unlike license renewal, which extends the temporal validity of a license, recertification is a matter of recordkeeping by state and local authorities. ("Pistol Permit Recertification" (Feb. 18, 2020), https://troopers.ny.gov/FAQs/Firearms/Recertification/ ("[The recertification provision's] goal is to strengthen and improve the accuracy of recordkeeping at both the state and local levels.".))[8] Thus, Plaintiff's allegation that the County and Police Department make determinations on renewals without legal authority is factually inaccurate and his claim of a Second Amendment violation on that basis is dismissed.

### e.  *Analytical Framework for Assessing Firearm Restrictions*

Following *Heller*, the Second Circuit adopted a two-step inquiry for determining the constitutionality of firearm restrictions. *See NYSRP v. City*, 883 F.3d at 55. First, the Court must "determine whether the challenged legislation impinges upon conduct protected by the Second Amendment, and second, if we conclude that the statute impinges upon Second Amendment rights, we must next determine and apply the appropriate level of scrutiny." *Id.* (internal quotations and citations omitted).

### i.  *Whether the Second Amendment Applies*

"[A]s the Second Circuit has done when faced with Second Amendment challenges to [local] firearm restrictions, the court proceeds on the assumption that the regulations at issue restrict activity protected by the Second Amendment." *Toussaint*, 2018 WL 4288637, at * 5 (quoting *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 247, 257 (2d Cir. 2015)) (internal quotations omitted).

---

[8] The Court may take judicial notice of the Pistol Permit Recertification information on the New York State Troopers website. *See Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253 (S.D.N.Y.), *aff'd*, 788 F. App'x 85 (2d Cir. 2019) (taking judicial notice of government websites).

*ii. Level of Scrutiny*

Assuming that Nassau County's policies with respect to NYPL § 400.00 restrict activity protected by the Second Amendment, the Court proceeds to determine what level of scrutiny to apply: rational basis, intermediate, or strict scrutiny. *See NYSRP v. City*, 883 F.3d at 55. Because the Court in *Heller* indicated that "rational basis review may be inappropriate for certain regulations involving Second Amendment rights," the Court considers whether to apply heightened scrutiny, i.e. intermediate or strict. *Id.* In doing so, the Court considers two factors: "(1) how close the law comes to the core of the Second Amendment right and (2) the severity of the law's burden on the right." *Id.* at 56.

Plaintiff cites repeatedly to *Kachalsky*, including for the inexplicable proposition that this Court should apply some level of scrutiny "higher than heightened scrutiny." (Pl.s' Mem. in Opp. at 11.) In *Kachalsky*, the Second Circuit applied intermediate scrutiny and affirmed New York's "proper cause" requirement for the issuance of a concealed carry license, even though the requirement "places substantial limits on the ability of law-abiding citizens to possess firearms for self-defense in public." 701 F.3d at 93, 96 ("Because our tradition so clearly indicates a substantial role for state regulation of the carrying of firearms in public, we conclude that intermediate scrutiny is appropriate in this case"). Indeed, the *Kachalsky* court noted that "[t]he Second Amendment does not foreclose regulatory measures to a degree that would result in handcuffing lawmakers' ability to prevent armed mayhem in public places." *Id*. at 96 (internal quotations and citations omitted).

While Plaintiff asserts that his "Complaint alleges the total ban on all [firearm] ownership," (Pl.'s Mem. in Opp. at 14), a review of Plaintiff's complaint indicates that the substance of his grievance is that Nassau County revoked his license following the Order of

Protection against him, which has resulted in a total ban on firearm ownership for him. Therefore, Plaintiff is not actually alleging in his complaint that Nassau County has implemented a policy banning all firearm ownership for all people. Thus, the restrictions Plaintiff complains of do not come close to the core of the Second Amendment right and are not as severe a burden on the right as Plaintiff makes them out to be. Furthermore, courts in this Circuit have previously applied intermediate scrutiny to NYPL § 400.11. *See Weinstein v. Krumpter*, 386 F. Supp. 3d 220, 231 (E.D.N.Y. 2019).

Given the similarity of the alleged restrictions at issue here to the one in *Kachalsky*, the Court will apply intermediate scrutiny.

### iii.   Application of Intermediate Scrutiny

"When applying intermediate scrutiny under the Second Amendment, 'the key question is whether the statute at issue is substantially related to the achievement of an important governmental interest.'" *NYSRP v. City*, 883 F.3d at 62 (quoting *NYSRP v. Cuomo*, 804 F.3d at 261) (alterations adopted).

"New York State has a legitimate interest in ensuring public safety, preventing crime, and confirming that only law-abiding, responsible individuals possess handguns to defend their person and property." *Weinstein*, 386 F. Supp. 3d at 231. Another court in this district ruling on a similar policy in Suffolk County to seize an individual's firearms when that individual has been involved in a domestic dispute found that the policy "substantially relate[d] to the government's important interest in limiting the ability of those who … are involved in domestic incidents to access firearms." *Torcivia v. Suffolk Cty., New York*, 409 F. Supp. 3d 19, 37-38 (E.D.N.Y. 2019); *see also Panzella*, 2015 WL 5607750 at * 11 (discussing "deadly combination" of firearms and domestic violence). The fact that licensing officers are given discretion in making determinations

about when to seize firearms or revoke pistol licenses depending on the attendant circumstances weighs in favor of finding that there is no Second Amendment violation. *Id.* ("By permitting a licensing official to make a case-by-case, individualized determination as to an individual's fitness to hold a license, these provisions permit the government to more narrowly prescribe the circumstances under which an individual's Second Amendment rights may be burdened.")

In addition to the government's important interest in preventing domestic violence, the Court rejects Plaintiff's narrow interpretation of Section 400.00(11). In this regard, the Court finds the reasoning in *Juzumas v. County of Nassau*, a similar case dealing with this issue, persuasive. In that case, the plaintiff, like Plaintiff here, argued that Nassau County had an unconstitutional policy of requiring people who had their pistol licenses revoked for "any reason" to surrender possession and ownership of their longarms. 2018 WL 4752303, *4. And as the County argues here, the County argued in *Juzumas* that it was merely enforcing NYPL § 400.00(11). *Id.* The court rejected the plaintiff's narrow interpretation of NYPL § 400.00(11) and found that there was no Second Amendment violation: "The plaintiff maintains that the 'this section' language in Section 400.00(11)(a) refers only to the reasons spelled out in Section 400.00(11)(a) – specifically, conviction of a felony or serious offense, issuance of an order of protection, or notice under New York mental hygiene law. I do not read the statute that narrowly. The plain language of the statute, and New York's longstanding interpretation of Section 400.00(11), provides that a pistol license can be revoked for reasons other than the situations listed in subsection (11)(a) that the plaintiff highlights." 2019 WL 4752303, * 7 n.17.

Indeed, another court in this district has noted that "[handgun licenses] may be revoked and cancelled at any time," without caveating the four situations specifically enumerated in NYPL § 400.00(11). *Weinstein*, 386 F. Supp. 3d at 227 (denying summary judgment on claim

based on Nassau County's alleged violation of NYPL § 400.00(11)). Furthermore, numerous courts in this Circuit "have previously found that there is no constitutional right to a handgun license in New York State." *See Id.* at 232 (collecting cases).

Nassau County's interpretation of NYPL § 400.00(11), as in, that it can seize firearms, including longarms, at any time, is substantially related to the important government interest of preventing domestic violence. Furthermore, as noted above, the County's interpretation of NYPL § 400.00(11) is shared by other courts in this district. For these reasons, the Court finds that Plaintiff has failed to allege a Second Amendment violation. Because Plaintiff's section 1983 claim is predicated solely on a purported Second Amendment violation, Defendants' motion to dismiss that claim is granted.[9]

*IV.*    Monell *Claim*

Plaintiff brings his second claim, for municipal liability, under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978). In order to bring a claim against a municipal defendant, a plaintiff must establish both a violation of his constitutional rights and that the violation was motivated by a municipal custom or policy. *Id*. at 690-91. Because the Court finds

---

[9] The Court notes that, even though he only alleges a Second Amendment violation, Plaintiff makes a number of allegations sounding in other constitutional violations, such as unreasonable seizure or due process arguments. For example, Plaintiff takes issue with the County's five-year waiting period before he may reapply for a pistol license. (TAC ¶¶ 121-23.) Yet, as noted above, Plaintiff has not brought a claim for unreasonable seizure or due process violations, despite having had three opportunities to amend his complaint to do so. Thus, the Court does not address those arguments and instead focuses on the sole constitutional violation that Plaintiff did allege, i.e. a Second Amendment violation. Similarly, Plaintiff asserts that the County is engaging in conduct already found to be unconstitutional in *Panzella*, as in, removing firearms from Plaintiff's home following the Order of Protection, even though the Order of Protection does not require removal of firearms. The court in *Panzella* did not rule on the propriety of Nassau County's policy with respect to removing firearms from the homes of people named in orders of protection, but rather on the plaintiff's Fourteenth Amendment due process claim that she was denied a hearing on the County's retention of those firearms. 2015 WL 5607750 at *1 ("The primary question before the Court is whether, after the [family court orders] expired, the Fourteenth Amendment required the Nassau County Sheriff's Department to provide plaintiff with a hearing concerning the department's continued retention of plaintiff's longarms."). In any event, Plaintiff was afforded an opportunity to be heard on the issue of reinstating his pistol license, as is evident from the Revocation Appeal noting Plaintiff's submission. (TAC Ex. 6.)

there has been no constitutional violation, Plaintiff's *Monell* claim does not stand, and the Court

need not address it. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell*

does not provide a separate cause of action for the failure by the government to train its

employees; it *extends* liability to a municipal organization where that organization's failure to

train, or the policies or customs that it has sanctioned, led to an independent constitutional

violation.") (emphasis in original).

V.      *Section 1981 Claim*

Plaintiff argues that the County and Police Department have created a "policy to deter

gun ownership generally, and in particular with disregard to the effect on the minority

community." (TAC ¶ 154.) Defendants argue that Plaintiff has failed to allege intentional

discrimination or that any alleged discrimination concerned any of the activities enumerated in

42 U.S.C. § 1981 "such as making and enforcing contracts, sue and be sued, etc." (Defs.' Mem.

in Supp. at 11-14.)

Section 1981 establishes that "[a]ll persons within the jurisdiction of the United States

shall have the same right in every State and Territory to make and enforce contracts . . . and to

the full and equal benefit of all laws and proceedings for the security of persons and property as

is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes

licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a). To state a section

1981 claim, a party must plead facts showing: "(1) the plaintiff is a member of a racial minority;

(2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination

concerned one or more of the activities enumerated in the statute." *Murray v. NYC Dep't of

Correction*, 2016 WL 5928672, at *3 (E.D.N.Y. Sept. 30, 2016) (quoting *Jones v. J.C. Penney's

Dep't Stores, Inc.*, 2007 WL 1577758, at *18 (W.D.N.Y. May 31, 2007), *aff'd sub nom. Jones v.*

*J.C. Penny's Dep't Stores Inc.*, 317 Fed. App'x. 71 (2d Cir. 2009)) (internal quotation marks omitted).

"[Section] 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination." *Juarez v. Nw. Mut. Life Ins. Co.*, 69 F. Supp. 3d 364, 367 (S.D.N.Y. 2014), *amended*, 2014 WL 12772237 (S.D.N.Y. Dec. 30, 2014) (quoting *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 291 (1982)). "Purposeful discrimination is 'conduct motivated by a discriminatory purpose,' rather than conduct that 'merely result[s] in a disproportionate impact on a particular class.'" *Id.* As such, "[n]aked assertions by a plaintiff that race was a motivating factor—without a fact specific allegation of a causal link between a defendant's conduct and the plaintiff's race—are too conclusory to allege a § 1981 violation." *Sherwyn Toppin Mktg. Consultants, Inc. v. City of New York*, 2013 WL 685382, at *4 (E.D.N.Y. Feb. 25, 2013) (quoting *Hargett v. N.Y.C. Transit Auth.*, 640 F. Supp. 2d 450, 473 (S.D.N.Y. 2009)) (internal quotation marks omitted).

Putting aside Defendants' concern about whether section 1981 properly covers pistol licenses, Plaintiff's claim fails because he is unable to show an intent to discriminate. Plaintiff has not alleged that his firearms were removed from his home or that his license was revoked because of his race. There is no indication in the Revocation Appeal that the decision to remove Plaintiff's firearms or to revoke his license had anything to do with his race, but rather with his volatile domestic situation. The Revocation Appeal explains in detail the "fourteen (14) incidents where law enforcement officers reported to [Plaintiff's] residence to assist with domestic incidents." (TAC Ex. 6 at 3.) Under these circumstances, there is no reason to conclude that either decision had anything to do with Plaintiff's race.

Plaintiff also alleges that the County's license program has a "disparate impact on the minority community." (TAC at 22.) Plaintiff contends that "[c]omparisons of the geographic concentration of pistol licenses in the County with the racial and ethnic geographic distribution of the population in the County….shows a high level of pistol licensees in the County's White communities" and a "low level of pistol licensees in the County's predominantly Hispanic communities" and "Black communities." (TAC ¶ 148.) Plaintiff further alleges that of the County's 64 pistol license revocations "disclosed thus far," 56 have been for people categorized racially as "White," 6 for people categorized racially as "Black," and none for people categorized racially as "Hispanic." (TAC ¶ 152.) Alone,[10] the comparison does not support an inference that the County discriminates or is racially motivated in granting pistol licenses. Furthermore, with respect to the data on license revocations, the overwhelming majority of the revocations were for people categorized as "White," compared to six for "Black" people and zero for "Hispanic" people. Plaintiff's allegations are conclusory and do not support an inference of discriminatory intent. Accordingly, Plaintiff has failed to state a claim for discrimination under 42 U.S.C. § 1981, and the claim is therefore dismissed.

VI.    *Punitive Damages*

Plaintiff contends that he is entitled to recover punitive damages against the County and the Police Department under 42 U.S.C. § 1983. (TAC ¶ 178.) Given that the Court has not found a Section 1983 violation, Plaintiff is not entitled to damages under section 1983. Even if the Court had found a Section 1983 violation, the Police Department is not a suable entity and has been dismissed from this case. As for the County, Defendants correctly note that punitive

---

[10] Plaintiff has not provided data to contextualize his allegations, such as a numerical breakdown of the racial and ethnic makeup of the county, the overall number of pistol license applications or revocations, etc. Though Plaintiff cites to maps depicting "Race and Ethnicity by Tract" in Nassau County, *see* TAC Exs. 11-13, he has not provided concrete numbers to use as comparators.

damages are not recoverable from a municipality. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 268 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981) ("For several reasons … we conclude that the deterrence rationale of § 1983 does not justify making punitive damages available against municipalities.")

*VII.     Legal Fees Against all Defendants*

Plaintiff further argues that he is entitled to legal fees pursuant to 42 U.S.C. § 1988(b). Defendants do not specifically move to dismiss this claim in their papers, however, given that the Court has otherwise dismissed Plaintiff's claims, there is no reason why Plaintiff should be entitled to legal fees. *See* 42 U.S.C. § 1988(b) ("[T]he court, in its discretion, may allow the *prevailing* party … a reasonable attorney's fee as part of the costs.") (emphasis added).

## CONCLUSION

For the foregoing reasons, Defendants' Rule 12(b)(6) motion to dismiss is granted. The Clerk of Court is directed to enter judgment and close the case.

**SO ORDERED.**

Dated: Central Islip, New York
         March 12, 2020

    s/ Denis R. Hurley      
Denis R. Hurley
United States District Judge